**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BLACK HALL, LLC and
BLACK HALL AEROSPACE, INC.,

v.

HOLLAND & KNIGHT LLP

Civil No. _____

**REDACTED**

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF BLACK HALL, LLC AND
## BLACK HALL AEROSPACE, INC.'S MOTION TO COMPEL

Black Hall, LLC and Black Hall Aerospace, Inc. (collectively, "Black Hall") hereby move for an order compelling Holland & Knight LLP ("Holland & Knight") to produce documents requested by a subpoena issued under Federal Rule of Civil Procedure 45. *See* Ex. 1, Subpoena to Holland & Knight (Nov. 17, 2017) ("Subpoena").

This motion to compel arises from multiple ongoing litigations in which Black Hall and another company, AAL USA, Inc., are disputing, among other things, the enforceability of an agreement signed in September 2016 to sell AAL USA's assets to Black Hall. Black Hall contends that the agreement was valid and should be enforced, while AAL USA contends the agreement was fraudulent and should be voided. One of the disputed factual issues in the cases is whether Oleg Sirbu, the majority owner of AAL USA at the time of the sale, was represented by independent outside counsel at the time of the sale. In particular, the parties dispute whether the law firm of Holland & Knight, which was outside counsel to AAL USA at the time of the sale, reviewed a draft of the agreement and advised Sirbu on revisions to it before he signed.

In January 2017, AAL USA filed a motion for a temporary restraining order and preliminary injunction in which it relied on an affidavit from two Holland & Knight attorneys.

The Holland & Knight attorneys, in a signed and notarized document that was an exhibit to AAL USA's motion, declared that they "solely and exclusively" counseled AAL USA and Sirbu on a different issue. As emails attached as exhibits herein show, that statement was incorrect—Sirbu did, in fact, ask Holland & Knight to review the draft agreement to sell AAL USA's assets to Black Hall (along with several collateral documents) and consulted with Holland & Knight before revising and signing the agreement. Nonetheless, AAL USA claimed in its motion that Holland & Knight had "testified" that the firm had not advised AAL USA on the sale, and AAL USA has alleged that Sirbu had signed the agreement only "under duress and relying on [Black Hall Aerospace majority-owner Paul] Daigle's misrepresentations and fraudulent suppressions."

By filing its motion and relying on the Holland & Knight affidavit, AAL USA voluntarily and affirmatively put its communications with Holland & Knight at issue and thereby waived any attorney-client privilege or attorney work product protections. AAL USA has used Holland & Knight's testimony about its attorney-client advice as a sword in litigation, yet now uses the attorney-client privilege as a shield to avoid discovery of the same issue. The advice provided by Holland & Knight to Sirbu on the agreement to sell AAL USA's assets goes directly to the issue of whether Sirbu was defrauded when he signed the agreement. It would be manifestly unfair to allow AAL USA to assert—falsely—that Sirbu was never advised by independent counsel during this transaction, without allowing Black Hall an opportunity to take discovery of these claims.

Finally, Holland & Knight has failed in its obligations to raise timely objections to Black Hall's subpoena under the Federal Rules of Civil Procedure. The subpoena was served on November 17, 2017. Even with a two-week extension provided by Black Hall, Holland & Knight should have provided objections by December 15, 2017 and a document production by

December 22, 2017. Holland & Knight did not any make any objections or produce any documents in response to Black Hall during this period.

On January 14, 2018, Black Hall reached out to Holland & Knight and suggested a conference call to discuss the subpoena and try to avoid the need for a court intervention. On January 16, 2018, Black Hall participated in a conference call with counsel for AAL USA and Holland & Knight. During that call AAL USA asserted, as it had done in an earlier letter, that the subpoena requested privileged communications and that no waiver of the privilege had occurred. In a follow-up phone call between Black Hall and Holland & Knight on January 18, 2018, Holland & Knight confirmed that it did not intend to produce any documents without a court order that AAL USA was asserting as privileged. Although Holland & Knight was not sure at that time what documents it had that were responsive to each request, it is clear from the exhibits attached to this motion that such documents do exist and that a court order is necessary to establish that any privilege has been waived.

For all of these reasons, Black Hall respectfully requests that the Court order Holland & Knight to produce documents in compliance with the subpoena.

**I.     BACKGROUND**

    **A.     AAL USA Is Denied Access to a Military Base Overseas.**

In 2016, AAL USA was a small business based in Huntsville, Alabama providing aviation services to the United States government, mostly through subcontracts with a larger company. AAL USA was minority-owned and managed by Paul Daigle, who was based in Huntsville, Alabama, and majority-owned by Oleg Sirbu, who was based in the United Arab Emirates. AAL USA's subcontract involved providing services on U.S. Army bases in Afghanistan.

On September 23, 2016, the U.S. Army denied AAL USA access to military bases outside the continental United States. The U.S. Army's letter stated that AAL USA could not perform certain requirements for one of AAL USA's contracts and required AAL USA to cease performance on the task order and leave any overseas U.S. military bases it was supporting under the contract within ten days. AAL USA was informed that the specific underlying reasons for the base access denial were classified. However, after AAL USA presented several options for remedying the issue to its prime contractor, which in turn presented those options to the U.S. Army, the U.S. Army agreed to allow AAL USA to continue performance of the contract if Sirbu was removed from the company.

To achieve this end, and in consultation with AAL USA's outside counsel at Maynard Cooper & Gale, Daigle and Sirbu agreed that AAL USA would sell its assets to Black Hall Aerospace and that all of AAL USA's employees would become employees of Black Hall Aerospace. Black Hall Aerospace was a separate company owned by Daigle and other managers at AAL USA.[1] The purpose of the transaction was to remove Sirbu from any role in the future performance of the contracts and to sever any alleged influence or connection to Sirbu's other company, AAL Group, Ltd.

### B. Holland & Knight Advises AAL USA's Majority Owner Sirbu in Connection with the Asset Purchase Agreement.

On September 29, 2016, an attorney from Maynard Cooper provided a draft Asset Purchase Agreement to Daigle and Sirbu to review and potentially sign. *See* Ex. 2, Email from Jon Levin to Oleg Sirbu and Paul Daigle (Sep. 29, 2016). Additionally, Maynard Cooper provided drafts of three collateral documents: an Assignment and Assumption Agreement, an AAL board resolution authorizing the sale, and a Bill of Sale. *Id.* The Maynard Cooper attorney

---

[1] Black Hall, LLC is a wholly-owned subsidiary of Black Hall Aerospace.

4

suggested signing the agreements "or rais[ing] any issues you have with these documents as quickly as possible." *Id.* (emphasis removed).

Upon receiving the email, Sirbu forwarded the draft documents to Ronald Oleynik at Holland & Knight, writing: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 2, Email from Oleg Sirbu to Ronald Oleynik (Sep. 29, 2016) (emphasis added). Oleynik responded: ▇▇ ▇▇ Ex. 3 (emphasis added).[2] Sirbu then followed up, asking Oleynik, ▇▇▇▇▇▇▇▇▇ *Id.*

After reviewing the drafts, Oleynik sent revised versions of the agreements, complete with Sirbu's signature, back to Maynard Cooper, stating: "Oleg asked me to forwarded [sic] these to you." Ex. 4, Email from Ronald Oleynik to Jon Levin. The revised versions circulated by Holland & Knight contained changes to multiple provisions in the Asset Purchase Agreement, including the list of assets being purchased and elements of the purchase price. *Compare* Ex. 2 Asset Purchase Agreement ¶¶ 1.01, 1.04 *with* Ex. 4, Asset Purchase Agreement ¶¶ 1.01, 1.04. Daigle then signed the Asset Purchase Agreement and related documents as reviewed and revised by Holland & Knight. *See* Ex. 5, Email from Paul Daigle to Oleg Sirbu and Jon Levin (Sep. 29, 2016) (attaching executed agreements).

Within a few weeks of the signed Asset Purchase Agreement, Sirbu began to renege on the deal, refusing to sign additional collateral documents that would have further effectuated the transaction and refusing to accept installment payments.

---

[2] Although Black Hall acquired the Holland & Knight privilege from AAL USA through the Asset Purchase Agreement and has the ability to waive it any time it chooses, *see* section II.B below, and even though this court may determine that these emails are not privileged or that the privilege has be waived, in an abundance of caution Black Hall has redacted the public version of this filing. Black Hall is filing a motion for leave to file an unredacted version of this memorandum and certain supporting exhibits under seal.

### C. Black Hall and AAL Engage in Litigation.

On October 29, 2016, Black Hall filed a civil suit in Alabama state court seeking injunctive relief to enforce the agreement. The case is titled *Black Hall Aerospace, Inc. v. AAL USA, Inc.*, Case No. 47-2016-901750 (Mad. Cty. Ala. Oct. 29, 2016) (the "Madison County Action"). On November 30, 2016, AAL filed an answer and counterclaim in the Madison County Action.

Additionally, in retaliation, AAL USA and Sirbu's other company, AAL Group, Ltd., began a scorched-earth campaign against Black Hall and its owners. Between AAL USA and AAL Group, they proceeded to file complaints, counterclaims, or crossclaims against Black Hall and certain of its owners in six separate lawsuits in federal and state courts in Alabama, plus an arbitration in Dubai, United Arab Emirates. Almost all of the lawsuits allege that Black Hall fraudulently obtained assets that at one time belonged to AAL USA.[3]

One of the lawsuits filed by AAL USA, *AAL USA, Inc. v. Black Hall Aerospace, Inc.*, No. CV 2016-904241 (Jefferson Cty. Cir. Ct.), was later removed to federal court. That case is now titled *AAL USA, Inc. v. Black Hall LLC*, No. 2:16-cv-02090-KOB (N.D. Ala. Dec. 30, 2016) (the "AAL USA Federal Action"). The AAL USA Federal Action has been consolidated for discovery purposes with one of the related cases, *AAL Group, Ltd. v. Black Hall Aerospace, Inc.*, No. 2:17-cv-00399-KOB (N.D. Ala. Mar 14, 2017) (the "AAL Group Federal Action"). Both federal cases are before Chief Judge Bowdre of the Northern District of Alabama. The subpoena in dispute here was issued under these consolidated federal cases. *See* Ex. 1, Subpoena at 1.

---

[3] In the one complaint that does not allege that Black Hall fraudulently obtained AAL USA's assets, Sirbu and AAL Group ironically take the opposite position, alleging that the Asset Purchase Agreement was legitimate and Black Hall now owes all of the debts that AAL USA owed to AAL Group before the transaction. *See AAL Group, Ltd. v. Black Hall Aerospace, Inc. et al.*, No. 2:17-cv-00399-KOB (N.D. Ala.). A motion to dismiss that complaint is currently pending before the Northern District of Alabama.

AAL USA's counterclaim in the Madison County Action and its second amended complaint in the AAL USA Federal Action make nearly identical allegations alleging that Black Hall and its principals participated in a "Takeover Scheme" culminating with the fraudulent execution of the Asset Purchase Agreement. The Northern District of Alabama has already concluded that these cases are "substantially the same":

> [T]he court concludes that the Madison County case and this case are composed of substantially the same parties. The two cases are also considering substantially the same issues . . . . AAL USA contends the Madison County action is about the APA while this action is about Mr. Daigle and Mr. Woolford's acts. But the Madison County case is litigating the same allegedly fraudulent conduct—misrepresentations surrounding the APA. AAL USA may be seeking different damages (from Black Hall Aerospace versus Mr. Daigle and Mr. Woolford individually) in the two actions, but the same fundamental conduct is at issue.

Mem. Op., AAL USA Federal Action (May 30, 2017), ECF No. 88 at 8.

### D. AAL USA Files an Affidavit by Holland & Knight in Support of an AAL USA Motion.

AAL USA has alleged that Sirbu signed the Asset Purchase Agreement "under duress and relying on Daigle's misrepresentations and fraudulent suppressions." *See* First Am. Compl. at 4 (Dec. 9, 2016), AAL USA Federal Action (originally filed in Jefferson County Court and removed to federal court); 2d Am. Compl. at 22, AAL USA Federal Action (June 13, 2017), ECF No. 96. On January 3, 2017, AAL USA and Saul Kirsch[4] filed a motion for a temporary restraining order and preliminary injunction against Black Hall Aerospace in the Madison County Action. *See* Ex. 6, AAL USA Motion for TRO and PI (Jan. 3, 2017).[5]

---

[4] Kirsch is a minority owner of Black Hall Aerospace who defected to AAL USA shortly after the Asset Purchase Agreement and now serves as the Vice President of AAL USA.

[5] The AAL USA motion, including a complete set of exhibits, is 289 pages. For efficiency, Black Hall has attached the motion and the relevant supporting exhibit, the affidavit of the Holland & Knight attorneys. If the Court would like a full set of the exhibits to AAL USA's motion, Black Hall is happy to provide a copy.

7

"In support of their Motion," AAL USA and Kirsch "rel[ied] on," among other things, the affidavit of two Holland & Knight attorneys, Ronald Perlman and Ronald Oleynik. *Id.* at 1. The Holland & Knight attorneys stated:

> Without waiving any other attorney-client privilege, Ronald S. Perlman and Ronald Oleynik hereby affirm that Holland & Knight, LLP counseled AAL USA, Inc. (and Oleg Sirbu as owner) solely and exclusively with regard to its ban from Kandahar and Bagram air bases, in order to assist in identifying and resolving whatever issues had precipitated the ban.

*Id.* at 23, Affidavit of Ronald Perlman and Ronald Oleynik.

In its motion, AAL USA claimed "the law firm that [then-Black Hall Chief Financial Officer Keith] Woolford claims represented AAL in the APA, Holland & Knight, has ***testified*** that it only represents AAL with respect to contracts with the United States Government." Ex. 6 at 9. (emphasis added). AAL USA used the Holland & Knight affidavit as evidence supporting its request for injunctive relief and as a basis to undermine the credibility of one of Black Hall's witnesses who disputed this claim.

### E.  Black Hall Issues a Subpoena to Holland & Knight.

On November 17, 2017, after mediation between the parties proved unsuccessful, Black Hall served a subpoena on Holland & Knight requesting documents related to the Asset Purchase Agreement and other non-privileged documents. The subpoena had a response deadline of December 8, 2017. *See* Ex. 1, Subpoena. On November 30, 2017, at AAL USA's request, *see* Ex. 7, Black Hall provided Holland & Knight with a two-week extension for responding to the subpoena in light of renewed settlement negotiations between Black Hall and AAL USA. *See* Ex. 8, Emails between Mark Sweet and Paul Kiernan (Nov. 30, 2017). Holland & Knight did not

object to the subpoena. Besides an acknowledgement of the extension, Holland & Knight did not respond to the subpoena during that period.[6]

On January 4, 2018, counsel for AAL USA requested that Black Hall withdraw the subpoena to Holland & Knight because the subpoena sought documents protected by attorney-client privilege or attorney work product doctrine. *See* Ex. 9, Letter from Fob James to Mark Sweet (Jan. 4, 2018). On January 16, 2018, counsel for Black Hall, AAL USA, and Holland & Knight participated in a conference call to determine whether Holland & Knight intended to comply with the subpoena and whether there was any way to resolve or narrow the issues raised by AAL USA without an order from the court. During that call AAL USA reasserted that the subpoena requested privileged communications and that no waiver of the privilege had occurred. Holland & Knight agreed to inform the parties whether it had any documents responsive to the subpoena by January 18, 2018. *See* Ex. 11, Emails between Mark Sweet to Philip Evans and Victor Hayslip (Jan. 16-17, 2018).

In a follow-up phone call between Black Hall and Holland & Knight on January 18, 2018, Holland & Knight confirmed that it did not intend to produce any documents that AAL USA was asserting as privileged without a court order. Although Holland & Knight was not sure at that time what documents it had that were responsive to each request, it is clear from the exhibits attached to this motion that such documents do exist and that a court order is necessary to establish that any privilege has been waived.

---

[6] Black Hall, AAL USA and AAL Group reached a separate agreement to suspend discovery between them until January 5, 2018 while they negotiated a settlement agreement. *See* Ex. 9, Email from Mark Sweet to Victor Hayslip and Kip Nesmith (Dec. 12, 2017). Although Black Hall provided a two-week extension to Holland & Knight, when that extension expired, Holland & Knight never reached out to see whether settlement talks were continuing or if a further extension was warranted. Burr & Forman, which requested a withdrawal of the subpoena on January 4, 2018, does not represent Holland & Knight.

9

## II. ARGUMENT

### A. Holland & Knight Has Failed to Make Timely Objections or Comply with the Subpoena.

Black Hall served its subpoena on November 17, 2017. Objections to the subpoena were due on December 1, 2017, *see* Fed. R. Civ. P. 45(d)(2)(B), and responses were due on December 8, 2017. With the two-week extension provided by Black Hall, objections were due December 15, 2017 and responses were due December 22, 2017. Holland & Knight did not provide any objections or responses to the subpoena during this period. Holland & Knight has therefore failed to meet its obligations under Rule 45(d)(2)(B) and Rule 45(e)(2)(A). For these reasons alone, this Court should compel compliance with the subpoena and hold Holland & Knight in contempt for failing without adequate excuse to obey the subpoena. *See* Fed. R. Civ. P. 45(g).

### B. Black Hall Owns Any Privilege Existing Before the Asset Purchase Agreement.

As a preliminary matter, it is important to understand that Black Hall—not AAL USA— holds the attorney-client and work product privileges up through September 29, 2016. As courts have emphasized, the transfer of a substantial portion of a company's assets, particularly where that transfer leads to new management and practical control of the business, results in a transfer of authority over all privileges. *See, e.g., Gilday v. Kenra, Ltd.*, No. 1:09-cv-00229-TWP-TAB, 2010 WL 3928593, at *2 (S.D. Ind. Oct. 4, 2010) (explaining that transfer of "substantially all" of a corporation's assets transfers control of the corporation, including authority to assert the attorney-privilege); *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) ("If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well."); *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 248 (W.D.N.Y. 2009) (concluding that a privilege will transfer to a

10

successor entity when (1) the asset transfer is accompanied by a transfer of business control, and (2) the management of the acquiring corporation continues the business of the selling corporation).

Under the terms of the Asset Purchase Agreement, Black Hall Aerospace acquired "all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill)." Ex. 5, Asset Purchase Agreement (Sep. 29, 2016) § 1.01; *see also* § 1.02 ("Excluded Assets. None."). As a result, Black Hall acquired all of AAL USA's rights to attorney-client privilege up to that point. Therefore, neither Holland & Knight nor AAL USA has any basis to object to the production of any privileged documents up through September 29, 2016, the date of the Asset Purchase Agreement.

### C. AAL USA Has Waived Its Attorney-Client Privilege.

Even if this Court is not yet able to determine who owns the privilege, it is clear that AAL USA has waived any attorney-client privilege by putting the privilege at issue in the litigation against Black Hall for AAL USA's benefit. A waiver occurs when a party uses the privilege to prejudice its opponent's case. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417-18 (11th Cir.). A client can waive the attorney-client privilege expressly or implicitly. *Id.* at 1417. Implied waiver, also known as the "at issue" doctrine or the "offensive use doctrine," is based on "the premise that the attorney-client privilege cannot be used as both a sword and a shield." *In re Mongelluzzi*, 568 B.R. 702, 710 (Bankr. M.D. Fla. 2017) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 518, 522 (D.D.C. 2005) ("The purpose of the implied waiver doctrine is to prevent an abuse of the privilege, that is, to prevent the confidentiality protected by the privilege from being used as a tool for manipulation of the truth-seeking process.") (internal citations and quotations omitted); *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762

11

(11th Cir. 1987) (emphasizing that the attorney-client privilege "was intended as a shield, not a sword.") (internal citation omitted).

In other words, a party waives the attorney-client privilege when it "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Cox*, 17 F.3d at 1417 (internal citation omitted); *see also Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009) (stating that "clients are deemed to waive the privilege when they place privileged information at issue through some affirmative act for their own benefit."); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.,* 129 F.3d 143, 151 (D.C. Cir. 1997) (explaining that a client may impliedly waive the privilege by "plac[ing] otherwise privileged matters in controversy").

Here, in support of a motion for a temporary restraining order, AAL USA publicly filed an affidavit from two Holland & Knight partners describing the scope of that firm's representation of AAL USA. *See* Ex. 6 at 22, Affidavit Ronald Perlman and Ronald Oleynik. The affidavit denied that Holland & Knight played any role in advising Sirbu on the Asset Purchase Agreement. *Id.* (affirming that Holland & Knight "counseled AAL USA, Inc. (and Oleg Sirbu as owner) solely and exclusively with regard to its ban from Kandahar and Bagram air bases."). Characterizing the Holland & Knight affidavit as "testimony," AAL USA affirmatively used that affidavit to undermine the credibility of a Black Hall witness, to demand an immediate inspection of Black Hall records, and most importantly, in a fraud case, to create the false impression that Sirbu was not advised by separate and independent outside counsel before signing the Asset Purchase Agreement in September 2016. By putting Holland & Knight's representation at issue, AAL USA has waived the attorney-client privilege.

12

Indeed, even Holland & Knight seems to recognize that it has at least partially waived the attorney-client privilege by providing this affidavit for AAL USA's affirmative use in the prior litigation. *See id.* (stating in the first sentence of its affidavit, "Without waiving any *other* attorney-client privilege . . ."). Courts have consistently held that a waiver of the privilege "extends to *all other communications* relating to the same subject matter." *In re Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994) (emphasis added); *see also Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) ("[One who] voluntarily discloses part of an attorney-client conversation... may have waived confidentiality—and thus the attorney client privilege—for the rest of that conversation *and* for any conversations related to the same subject matter."); *In re Sealed Case*, 877 F.2d 976, 980–81 (D.C. Cir. 1989) ("[W]aiver of the privilege in an attorney-client communication extends 'to all other communications relating to the same subject matter.'") (internal citation omitted). And, a waiver need not be intentional to trigger an entire subject-matter waiver. *See, e.g., In re Sealed Case*, 877 F.2d at 980 (finding that inadvertent disclosures can result in a subject-matter waiver). Thus, Holland & Knight's discussion of the *scope* of its representation waives all materials related to that representation.

Furthermore, it would be manifestly unfair if Black Hall did not have an opportunity to take discovery of Holland & Knight's files on this subject. Holland & Knight has provided an affidavit claiming that it "solely and exclusively" counseled AAL USA and Sirbu on the base access ban. Ex. 6 at 23, Affidavit Ronald Perlman and Ronald Oleynik. However, as Exhibits 2-4 clearly show, Sirbu asked Holland & Knight to review the Asset Purchase Agreement before Sirbu signed it, Sirbu spoke with Holland & Knight, and then Holland & Knight revised the agreement before returning it to Maynard Cooper and Daigle. This strongly suggests that Holland & Knight's affidavit was, at best, misleading and, at worst, simply false. Moreover, it

13

demonstrates that Sirbu did have an opportunity to consult with independent outside counsel before signing anything.[7] Since the validity of the Asset Purchase Agreement is one of the ultimate issues in the litigation between Black Hall and AAL USA, and the ability of Sirbu to consult with independent outside counsel before signing the agreement is a material fact in this dispute, Holland & Knight should be compelled to produce the documents on this subject requested by the subpoena.[8]

### D.  AAL USA Has Waived Its Attorney Work Product Protection.

The at-issue waiver "arises in both the attorney-client privilege and work-product doctrine scenarios." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 286 F.R.D. 661, 664 (S.D. Fl. 2012); *see also Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 255 (D.D.C. 2013) (finding that the plaintiff placed attorney work product in underlying litigation "at issue" and waived work product protection by bringing an indemnification lawsuit seeking reimbursement of attorney's fees). And, much like an "at issue" waiver of the attorney-client privilege, "[a] party who selectively and deliberately discloses work product to gain a tactical advantage during litigation waives the protection as to the entire subject matter of the disclosure." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 226 (D.D.C. 2012). For example, in *Bowles v. National Association of Home Builders*, the defendant purposefully disclosed opinion work product that supported its argument, yet refused to disclose work product that

---

[7] Although not the subject of this motion, Sirbu also consulted with an attorney at his other company, AAL Group, Ltd., before signing the Asset Purchase Agreement.

[8] As discussed above in section I.B of this memorandum, Black Hall has discovered emails between AAL USA and Holland & Knight suggesting that Holland & Knight's affidavit regarding the scope of its legal representation is false. If the Court determines that Holland & Knight's affidavit is indeed false, and that AAL USA misled the Madison County Court on this issue, this provides an additional basis for the waiver of both the attorney-client and work product privileges. *See Int'l Med. Grp., Inc. v. Walker*, No. 1:08–cv–923–JMS–TAB, 2011 WL 1752101, at *3 (S.D. Ind. May 9, 2011) (holding that clients waived the attorney-client privilege when they used their attorneys to commit discovery fraud; defendants, in sworn discovery responses filed via their attorneys, falsely stated that they did not retain certain relevant documents).

14

undermined its argument. 224 F.R.D. 246, 259 (D.D.C. 2004). This Court found that an entire subject matter waiver was necessary to protect the adversary system because it "ensur[ed] that the evidence in the record w[ould] not reflect only one side or [] part of a privileged communication." *Id.* at 259.

Likewise, here, a subject matter waiver is necessary to protect the adversary system. AAL USA relied on Holland & Knight's characterization of its legal representation in an affirmative motion to seek injunctive relief. In doing so, AAL USA deliberatively used testimony from its attorneys about their work to try to gain a tactical advantage in the litigation— one that Black Hall cannot rebut unless it is allowed to engage in discovery of Holland & Knight's legal representation. Moreover, disclosure of Holland & Knight's documents will not, in any way, reveal AAL's litigation strategies or trial preparations, as Holland & Knight does not represent AAL USA in the current action. Thus, the very dangers that the attorney work product privilege seeks to protect, are not present in this case. *See Hickman v. Taylor, 329 U.S. 495, 511 (1947)* (work product privilege protects an attorney's mental impressions, and if such materials were "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten [and] [a]n attorney's thoughts, heretofore inviolate, would not be his own.").[9]

## III. THE PARTIES APPEAR TO HAVE NARROWED THE ISSUES IN DISPUTE.

During meet and confer discussions, the parties appear to have been able to narrow the issues in dispute, as not all of the requests will require a ruling on the existence of or waiver of a privilege. Holland & Knight has informed Black Hall that it does not have any documents responsive to Request 7. Holland & Knight has informed Black Hall that it does have

---

[9] There should be no disagreement that Requests 7-10 of the subpoena seek non-privileged documents. In meet-and-confer discussions, Holland & Knight has indicated a willingness to produce

15

communications with the United States government that would be responsive to Request 9 and that it would produce those to Black Hall, subject to redactions for any privileged discussions between Holland & Knight and AAL USA in the same email chains. Holland & Knight also has invoices that are responsive to Request 13 and is willing to produce those with redactions. Black Hall is willing to accept redactions of any attorney-client privileged or attorney work product portions of invoices that are responsive to Request 13.

Accordingly, Black Hall is seeking an order requiring production of documents in response to Requests 1-6 and 11-12. Black Hall, however, is not seeking an order compelling production of documents in response to Requests 7-10 and 13 as long as Holland & Knight produces to Black Hall in a timely fashion any existing documents responsive to these requests and provides a log of any documents withheld from production of those requests.

## IV. CONCLUSION

For these reasons, Black Hall requests that this Court compel Holland & Knight to comply with the subpoena forthwith.

Dated: January 18, 2018

Respectfully submitted,

/s/ *(signature)*

Todd A. Bromberg (D.C. Bar # 472554)
Mark B. Sweet (D.C. Bar # 490987)
Stephen J. Obermeier (D.C. Bar # 978122)
**WILEY REIN LLP**
1776 K Street, NW
Washington, DC  20006
Phone:  (202) 719-7000
Facsimile:  (202) 719-7049

OF COUNSEL:

Roderic G. Steakley
Benjamin R. Little
**SIROTE & PERMUTT, P.C.**
305 Church Street, Suite 800
Huntsville, Alabama 35801
Telephone:   (256) 536-1711
Facsimile:   (256) 518-3681
Email: rsteakley@sirote.com
  blittle@sirote.com

Thomas A. Woodall
J. Rushton McClees
Joshua L. Hornady
**SIROTE & PERMUTT, P.C.**
2311 Highland Ave. S., Suite 500
Birmingham, AL 35205
Telephone:   (205) 930-5100
Facsimile:   (205) 930-5101
Email: twoodall@sirote.com
rmcclees@sirote.com
jhornady@sirote.com

James H. Richardson
**RICHARDSON MAPLES, P.C.**
301 East Holmes Avenue, Suite 100
P.O. Box 18667 [35804-8667]
Huntsville, Alabama 35801
Telephone: (256) 533-2440
Facsimile: (256) 533-2441
Email: jim@richardsonmaples.com

*Counsel for Black Hall, LLC and Black Hall Aerospace, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify on January 18, 2018, I served a copy of the foregoing by email and overnight mail on the following:

Victor Hayslip (*vhayslip@burr.com*)
Kip N. Nesmith (*nesmith@burr.com*)
Benjamin B. Coulter (*bcoulter@burr.com*)
Fob James, IV (*fjames@burr.com*)
BURR & FORMAN LLP
420 North 20th Street
3400 Wells Fargo Tower
Birmingham, Alabama 35203

Richard A. Freese
Freese & Goss, PLLC
1901 6th Avenue No, Suite 3120
Birmingham, AL 35203
rich@feeseandgoss.com

*Counsel for AAL USA, Inc., AAL Group, Ltd., Saul Kirsch and Oleg Sirbu*

Philip T. Evans
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, DC 20006
philip.evans@hklaw.com

*Counsel for Holland & Knight LLP*

Michael J Douglas
LEAK & DOUGLAS PC
The John A. Hand Building
17 20th Street North, Suite 200
Birmingham, AL 35203
mdouglas@leakdouglas.com

Oliver Benton Curtis, III
BROAD AND CASSEL
2 South Biscayne Boulevard,
Suite 2100
Miami, FL 33131
bcurtis@broadandcassel.com

*Counsel for Keith Woolford*

/s/ Mark Sweet

Mark Sweet