# Exhibit 4

| | |
|---|---|
| **From:** | ron.oleynik@hklaw.com |
| **Sent:** | Thursday, September 29, 2016 6:10 PM |
| **To:** | JLevin@maynardcooper.com |
| **Cc:** | oleg.sirbu@aal-usa.com; paul.daigle@aal-usa.com; Ronald.Perlman@hklaw.com |
| **Subject:** | FW: Sale Documents |
| **Attach:** | AAL USA-Joint Unanimous Written Consent.pdf; AAL USA-Black Hall_Assignment and Assumption Agreement.pdf; AAL USA-Black Hall_Asset Purchase Agreement.pdf; AAL USA-Black Hall_Bill of Sale.pdf |

Jon:

Oleg asked me to forwarded these to you.  The only change I'm aware of is the removal of 1.01(f).

Please let me know if you have any questions.

Regards,

Ron

**Ronald A. Oleynik | Holland & Knight**
Partner
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, DC 20006
Phone 202.457.7183 | Fax 202.955.5564
ron.oleynik@hklaw.com | www.hklaw.com

Add to address book | View professional biography

> **From:** Oleg Sirbu [mailto:oleg.sirbu@aal-usa.com]
> **Sent:** Thursday, September 29, 2016 6:22 PM
> **To:** Oleynik, Ronald (WAS - X77183) <ron.oleynik@hklaw.com>
> **Subject:** FW: Sale Documents
>
> *Oleg Sirbu*
> President
>
> 
>
> **Office:** +1 256.971.1967
> **Mobile:** +1 919.999.0185
> **Mobile OCONUS:** +971.50980.6748
> **Email:** oleg.sirbu@aal-usa.com
>
> The information and/or technical data contained or attached to this e-mail is confidential and/or proprietary.  It may be subject to the International Traffic in Arms Regulations (ITAR) or the Export Administration Regulations (EAR) and may require an approved export license prior to its export.  An export can include a release or disclosure to a foreign national inside or outside the United States whether verbal or physical.  This message is intended for use only to the individuals to whom it is addressed. Include this notice with any reproduced portion of this information.
>
> **From:** Jon Levin [mailto:JLevin@maynardcooper.com]
> **Sent:** Thursday, September 29, 2016 4:40 PM

MCG 000501

**CONFIDENTIAL**

**To:** Oleg Sirbu; Paul Daigle
**Cc:** Andy Watson
**Subject:** Sale Documents

Oleg and Paul,

Please find attached for your signature the sale documents, which consist of the following:
- Asset Purchase Agreement
- Assignment and Assumption Agreement
- Unanimous Written Consent for the Sale
- Bill of Sale

I understand that these documents reflect the business terms to which the parties have agreed.  As the Government and Leidos have repeatedly moved the date for agreement up - - from Friday COB to Thursday COB to Thursday midday to this morning - - I strongly suggest that you either sign or raise any issues you have with these documents **as quickly as possible**.  Andy and Matthew have worked these documents quickly and efficiently to ensure that we meet the moving deadline target.

In addition, to ensure a smooth transition, I suggest some period of separation between the parties, e.g., two months, to ensure that the people and entities pulling the strings on this transaction understand that a clear line of fracture now exists.

Thank you,

Jon

**JON** LEVIN
Shareholder
T: **256.512.5713**
F: **256.512.5735**
jlevin@maynardcooper.com
655 Gallatin Street
Huntsville, Alabama 35801
www.maynardcooper.com



Confidentiality Notice - The information contained in this e-mail and any attachments to it may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

IRS Circular 230 Disclosure - To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Please consider the environment before printing this email.**


Confidentiality Notice - The information contained in this e-mail and any attachments to it is intended only for the named recipient and may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately

MCG 000502

CONFIDENTIAL

of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

MCG 000503

CONFIDENTIAL

## JOINT UNANIMOUS WRITTEN CONSENT OF
## ALL OF THE STOCKHOLDERS AND ALL OF THE MEMBERS OF THE
## BOARD OF DIRECTORS OF
## AAL USA INC.

The undersigned, constituting the all the stockholders (the "Stockholders") and all of the members of the Board of Directors (the "Board") of **AAL USA INC.**, a Delaware corporation (the "Corporation"), acting pursuant to the authority of Delaware General Corporation Law Section 228 and Section 141, hereby adopt the following resolutions:

**WHEREAS**, the Stockholders and the Board have analyzed and considered certain business conditions encountered by the Corporation; and

**WHEREAS**, the Stockholders and the Board deem it desirable and in the best interest of the Corporation to enter into a transaction pursuant to which the Corporation shall sell substantially all of its assets to Black Hall Aerospace, Inc., an Alabama corporation (the "Buyer") and undertake certain other obligations in connection with such sale (collectively, the "Transaction"); and

**WHEREAS**, in connection with the Transaction, the Stockholders and the Board deem it desirable and in the best interest of the Corporation to enter into that certain Asset Purchase Agreement, in substantially the form attached hereto as **Exhibit A**, by and between the Corporation and the Buyer (the "Purchase Agreement"), as well as all ancillary agreements to the Purchase Agreement (the "Ancillary Agreements"); and

**WHEREAS**, the Stockholders and the Board have considered the purchase price set forth in the Purchase Agreement (the "Purchase Price"), and believe the Purchase Price constitutes fair consideration for all of the Corporation's assets, after considering the fact that the Corporation has lost most, and expects to lose the rest, of its contracts, which are its only sources of revenue;

**NOW, THEREFORE, BE IT RESOLVED**, that the Stockholders and the Board do hereby approve, ratify, and confirm the Transaction in all respects; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby approve of the form of the Purchase Agreement and the Ancillary Agreements in all respects; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby authorize and direct Mr. Oleg Sirbu, as Chairman of the Board of the Corporation, to execute and deliver the Purchase Agreement, the Ancillary Agreements, and all

{H0301409.1}

other documents useful or necessary, as determined by Mr. Sirbu, in his discretion, to consummate the Transaction; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby authorize and direct Mr. Sirbu and the other officers of the Corporation to take any other actions as they, in their sole discretion, deem necessary to complete the Transaction; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby waive any required notice of a meeting necessary to give effect to the resolutions set forth above.

This Written Consent is to be placed with the minutes and proceedings of the Corporation, and the action taken herein is as fully effective as if enacted at a meeting duly called and held. This Written Consent may be executed in any number of counterparts, all of which together shall constitute one Written Consent. It shall not be necessary that any counterpart be signed by all parties, so long as each counterpart shall be signed by one of the parties. Transmission of an executed copy via E-mail (PDF) or facsimile shall constitute due and sufficient delivery of this Written Consent, and shall have the same effect as a manually executed original.

Dated effective as of the 29th day of September, 2016.

_____
Oleg Sirbu
as Shareholder and Member of the Board of Directors of the Corporation


_____
Paul Daigle
as Shareholder and Member of the Board of Directors of the Corporation

(CONSTITUTING ALL OF THE CORPORATION'S STOCKHOLDERS AND ALL OF THE MEMBERS OF THE CORPORATION'S BOARD OF DIRECTORS)

{H0301409.1}                    2

MCG 000505

CONFIDENTIAL

## EXHIBIT A

## ASSET PURCHASE AGREEMENT

(See attached.)

{H0301409.1}

MCG 000506

**CONFIDENTIAL**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "**Agreement**"), effective as of September 29, 2016 (the "**Effective Date**"), is by and between AAL USA Inc., a Delaware corporation ("**Seller**"), and Black Hall Aerospace, Inc., an Alabama corporation ("**Buyer**").

WHEREAS, Seller and Buyer have entered into a certain Asset Purchase Agreement, dated as of September 29, 2016 (the "**Purchase Agreement**"), pursuant to which, among other things, Seller has agreed to assign all of its rights, title and interests in, and Buyer has agreed to assume all of Seller's duties and obligations under, all of the Seller's contracts (the "**Assigned Contracts**").

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Definitions</u>. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2. <u>Assignment and Assumption</u>. Seller hereby sells, assigns, grants, conveys and transfers to Buyer all of Seller's right, title and interest in and to the Assigned Contracts. Buyer hereby accepts such assignment and assumes all of Seller's duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of Seller under the Assigned Contracts accruing on and after the Effective Date.

3. <u>Terms of the Purchase Agreement</u>. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, and agreements relating to the Assigned Contracts are incorporated herein by this reference. The parties hereto acknowledge and agree that the representations, warranties, covenants, and agreements contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction).

5. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature page follows]*

{H0301215.1}

MCG 000507

CONFIDENTIAL

*[Signature Page to Assignment and Assumption Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

BUYER:

Black Hall Aerospace, Inc.

By: _____
Name: Paul Daigle
Its:     President


SELLER:

AAL USA Inc.

By: _____
Name: Oleg Sirbu
Its:     Chairman of the Board

{H0301215.1}                    2

MCG 000508

CONFIDENTIAL

# ASSET PURCHASE AGREEMENT

between

## AAL USA INC.

and

## BLACK HALL AEROSPACE, INC.

dated as of

September 29, 2016

{H0301412.2}

MCG 000509

CONFIDENTIAL

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of September 29, 2016, is entered into between AAL USA Inc., a Delaware corporation ("**Seller**") and Black Hall Aerospace, Inc., an Alabama corporation ("**Buyer**").

## RECITALS

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, the rights and obligations of Seller to the Purchased Assets and the Assumed Liabilities (as defined herein), subject to the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
### PURCHASE AND SALE

**Section 1.01**     **Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("**Encumbrance**"), all of Seller's right, title and interest in all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets) (collectively, the "**Purchased Assets**"), including, without limitation, the following:

(a)     all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories;

(b)     all contracts of any kind whatsoever;

(c)     all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property;

(d)     all real property leased by Seller and used in or necessary for the conduct of its business as currently conducted (together with all rights, title and interest of Seller in and to leasehold improvements relating thereto, including, but not limited to, security deposits, reserves or prepaid rents paid in connection therewith, (collectively, the "**Leased Real Property**");

(e)     all permits, which are held by Seller and required for the conduct of its business as currently conducted or for the ownership and use of the Purchased Assets; and

**Section 1.02**     **Excluded Assets.** None

**Section 1.03**     **Assumption of Liabilities.** Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge the liabilities and obligations arising after the Closing (as defined herein) under the Purchased Assets, but only to

{H0301412.2}                                            2

MCG 000510

CONFIDENTIAL

the extent that such liabilities and obligations do not related to any breach, default or violation by Seller on or prior to the Closing (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created.

**Section 1.04** **Purchase Price.** The aggregate purchase price for the Purchased Assets shall be $501,660.46.

(a) Upon execution of this Agreement, Buyer shall pay Seller $100,000 of this Price.

(b) Buyer shall make payment to the Seller of $200,000.00 of this price upon receipt by the Buyer Invoice with the due date of October 30, 2016 and the remaining $201,660.46 with due date of November 30, 2016.

**Section 1.05** **Closing.** The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place simultaneously with the execution of this Agreement on the date of this Agreement (the "**Closing Date**") at the offices of Maynard, Cooper & Gale, P.C., 655 Gallatin Street SW, Huntsville, Alabama 35801. The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

**Section 1.06** **Closing Deliverables.**

(a) At the Closing, Seller shall deliver to Buyer the following:

    (i) This document executed.

    (ii) an assignment and assumption agreement in the form of **Exhibit C** hereto (the "**Assignment and Assumption Agreement**") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

    (iii) an Assignment and Assumption of Lease in form and substance satisfactory to Buyer (the "**Assignment and Assumption of Lease**") and duly executed by Seller;

(b) At the Closing, Buyer shall deliver to Seller the following:

    (i) the Payment as defined in Section 1.04;

    (ii) the Assignment and Assumption Agreement duly executed by Buyer;

    (iii) the Assignment and Assumption of Lease duly executed by Buyer; and

MCG 000511

CONFIDENTIAL

## ARTICLE II
### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this **Article II** are true and correct as of the date hereof.

**Section 2.01** **Organization and Authority of Seller; Enforceability.** Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware. Seller has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

**Section 2.02** **No Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or the Purchased Assets; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance on the Purchased Assets. No consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

**Section 2.03** **Title to Purchased Assets.** Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this **Article III** are true and correct as of the date hereof.

**Section 3.01** **Organization and Authority of Buyer; Enforceability.** Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state of Alabama. Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Buyer of this

CONFIDENTIAL

Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

**Section 3.02**     **No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

### ARTICLE IV
### COVENANTS

**Section 4.01**     **Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**Section 4.02**     **Transfer Taxes.** All transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid equally by Buyer and Seller when due. Seller shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees, and Buyer shall cooperate with respect thereto as necessary and reimburse Seller for one half of such taxes or fees.

**Section 4.03**     **Further Assurances.** Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder.

### ARTICLE V
### MISCELLANEOUS

**Section 5.01**     **Expenses.** All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 5.02**     **Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the

{H0301412.2}                                           5

MCG 000513

CONFIDENTIAL

addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third business day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 5.02**):

| | |
|---|---|
| If to Seller: | Attn:  Oleg Sirbu |
| | |
| | e-mail: |
| If to Buyer: | Attn:  Paul Daigle |
| | |
| | e-mail: |

**Section 5.03**    **Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 5.04**    **Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 5.05**    **Entire Agreement.** This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 5.06**    **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 5.07**    **No Third-party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal

MCG 000514

CONFIDENTIAL

or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 5.08** **Amendment and Modification.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

**Section 5.09** **Waiver.** No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 5.10** **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction).

**Section 5.11** **Submission to Jurisdiction.** Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Alabama in each case located in the city of Huntsville and county of Madison, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

**Section 5.12** **Waiver of Jury Trial.** Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

**Section 5.13** **Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 5.14** **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

{H0301412.2}                                            7



MCG 000515

CONFIDENTIAL

*[Signature Page to Asset Purchase Agreement]*

  IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

BUYER:

Black Hall Aerospace, Inc.

By: _____
Name: Paul Daigle
Its:  President

SELLER:

AAL USA Inc.

By: *[signature]*
Name: Oleg Sirbu
Its:  Chairman of the Board

{H0301412.2}  8

## BILL OF SALE

This Bill of Sale (the "Bill of Sale"), dated as of the 29th day of September, 2016, is executed and delivered by **AAL USA INC.**, a Delaware corporation (the "Seller") to **BLACK HALL AEROSPACE, INC.**, an Alabama corporation (the "Buyer"). All capitalized terms used and not defined herein shall have the respective meanings ascribed to such terms in that certain Asset Purchase Agreement, dated as of September 29, 2016, by and between the Seller and the Buyer (the "Purchase Agreement").

## AGREEMENT

**NOW, THEREFORE**, in consideration of the execution and delivery of the Purchase Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller does hereby unconditionally, absolutely, and irrevocably grant, bargain, sell, transfer, assign, convey, set over and deliver unto Buyer all of the Seller's right, title and interest in and to the Purchased Assets (as such term is defined in the Purchase Agreement) free and clear of all liens, charges and encumbrances other than those identified in the Purchase Agreement. The Purchased Assets transferred by this Bill of Sale are transferred pursuant to, this Bill of Sale is governed by, and the rights and obligations of Buyer and the Seller are subject to, the terms and conditions of the Purchase Agreement. To the extent that any term or provision of this Bill of Sale is or is deemed to be inconsistent with the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control.

**IN WITNESS WHEREOF**, this Bill of Sale has been executed as of the date and year first written above.

SELLER:

AAL USA Inc.

By: _____
Name: Oleg Sirbu
Its:    Chairman of the Board

{H0301395.1}

MCG 000517

CONFIDENTIAL