FILED

2018 Jan-22 PM 06:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AAL USA, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) **Case No. 2:16-cv-02090-KOB** | |
| | ) | |
| | ) | |
| **BLACK HALL LLC,** *et al.,* | ) **This Document Relates to All Cases.** | |
| **Defendants.** | ) | |
| | ) | |

| | | |
|---|---|---|
| **AAL GROUP, LTD.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) **Case No. 2:17-cv-00399-KOB** | |
| | ) | |
| **BLACK HALL AEROSPACE,** | ) | |
| **INC.,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

### BLACK HALL, LLC AND BLACK HALL AEROSPACE, INC.'S OPPOSITION TO AAL USA'S MOTION TO QUASH

Black Hall, LLC and Black Hall Aerospace, Inc. (collectively, "Black Hall") hereby oppose AAL USA Inc.'s Motion to Quash. First, the Court should deny the Motion to Quash because it suffers from procedural defects. Under Federal Rule of Civil Procedure 45, AAL USA should have filed its Motion to Quash in the U.S. District Court for the District of Columbia, the jurisdiction where the subpoena recipient is located, the subpoena was served, and the document production was

requested. Indeed, enforcement of this subpoena is already the subject of a pending Motion to Compel, filed by Black Hall, in the District of Columbia. AAL USA's filing here only creates duplication and confusion.

Second, the Court should deny the Motion to Quash because AAL USA has waived its privilege. As detailed in Black Hall's Motion to Compel, AAL USA introduced an affidavit from Holland & Knight as testimony in support of a motion for injunctive relief. The affidavit was no ordinary "attorney affidavit." It declared that Holland & Knight solely and exclusively advised AAL USA and Sirbu on issues other than the Asset Purchase Agreement. By filing that testimony and relying on it as evidence, AAL USA voluntarily and affirmatively put at issue the extent to which Holland & Knight LLP advised AAL USA and Oleg Sirbu on the transaction at the heart of this dispute.

Furthermore, the affidavit signed by Holland & Knight and relied on by AAL USA was false. As the exhibits to Black Hall's Motion to Compel demonstrate, before signing the agreement Sirbu did in fact ask Holland & Knight to review a draft of the Asset Purchase Agreement and collateral documents and had an opportunity to consult with Holland & Knight. Then, after Sirbu consulted with Holland & Knight, Sirbu made changes to the Asset Purchase Agreement and those changes were included in the version signed by the parties. In sum, AAL USA is

DOCSHSV\241795\1

using privilege as both a sword and a shield, and it would be manifestly unfair to deny Black Hall an opportunity to take discovery of these issues.

Finally, the Court should deny AAL USA's Motion to Quash, which asks for the entire subpoena to be quashed (or in the interim stayed), because Black Hall is only seeking enforcement of its subpoena to the extent necessary after several conferences to narrow or resolve the issues with Holland & Knight and AAL USA. As detailed below and in Black Hall's Motion to Compel, Black Hall filed the Motion to Compel based on its awareness that responsive documents existed and only after Holland & Knight confirmed that it did not intend to produce any documents, without a court order, that AAL USA was asserting as privileged. And even then, Black Hall limited the relief requested in the Motion to Compel to Requests 1-6 and 11-12—the subpoena requests where a court order was necessary. For the remaining requests, which by their plain terms do not involve issues of privilege waiver or for which responsive documents appear not to exist, Black Hall has agreed to accept documents with appropriate redactions and a privilege log.

## I. THE COURT SHOULD DENY AAL USA'S MOTION TO QUASH FOR PROCEDURAL DEFECTS AND TO AVOID MULTIPLE PROCEEDINGS ON THE SAME SUBPOENA.

### A. AAL USA Has Filed Its Motion in the Wrong Court.

Federal Rule of Civil Procedure 45 makes clear that the proper forum for filing a motion to compel or quash a subpoena is the district court where compliance is

3

required. Rule 45(d)(2)(B)(i) states: "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Similarly, Rule 45(d)(3)(A) sets forth the grounds that, "on timely motion, the court for the district where compliance is required must quash or modify a subpoena." This includes motions to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Likewise, Rule 45(d)(3)(B) identifies the situations when, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena . . . ."

Here, the place of compliance is Washington, DC. Black Hall served the subpoena on Holland & Knight LLP at its office at 800 17th Street NW, Suite 1100, Washington, DC 20006. *See* Ex. A, Executed Subpoena at 9. This office is the location of the two Holland & Knight attorneys who signed the affidavit that is the basis for the subpoena. *See* Holland & Knight, Profile of Ronald Oleynik, https://www.hklaw.com/ronald-oleynik/; Profile of Ronald Perlman, https://www.hklaw.com/Ronald-Perlman/. In compliance with Rule 45(c)(2), which limits production of documents to places within 100 miles of where the subpoena recipient regularly transacts business, Black Hall requested production of documents at the office of its law firm, Wiley Rein LLP, in Washington, DC. *See* Ex. A,

4

Executed Subpoena at 2. Holland & Knight does not have a presence in the Northern District of Alabama.

Accordingly, the proper forum for filing any motions to compel or quash this subpoena is the U.S. District Court for the District of Columbia.

### B. This Subpoena Is Already the Subject of a Pending Enforcement Proceeding in the District of Columbia.

On January 18, 2018, after several attempts to narrow the issues in dispute, Black Hall filed a motion to compel production of documents from Holland & Knight. *See* Ex. B, Black Hall Motion to Compel (D.D.C. Jan. 18, 2018). The filing is a miscellaneous proceeding in the U.S. District Court for the District of Columbia, titled *Black Hall, LLC et al. v. Holland & Knight LLP*, No. 18-mc-00004 (D.D.C.), and assigned to Judge Colleen Kollar-Kotelly. In anticipation of an opposition, Black Hall served a copy of its motion on both Holland & Knight and counsel for AAL USA, AAL Group, and Sirbu the day it was filed. *See* Ex. C.

Rather than file an opposition to the motion to compel in that proceeding, AAL USA filed its own motion to quash the subpoena in this Court. The Motion to Quash only creates confusion and a risk of conflicting rulings, and accordingly, should be denied. *See* Fed. R. Civ. P. 1 (Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *see also* Fed. R.

5

Civ. P. 1 2015 Amendment ("[T]he parties share the responsibility to employ the rules in the same way.").

When faced with duplicative motions, courts have applied the first-to-file rule to address motions in the order in which they were filed. *See, e.g., Tagle v. Nevada*, No. 2:15-cv-00216-JCM-PAL, 2016 WL 6440423, at *2 (D. Nev. Oct. 27, 2016) ("Once a motion is filed, filing a duplicate motion will not speed up the court's review of a movant's request since motions are generally addressed in the order which they were filed. To the contrary, filing duplicate motions increases the court's workload and generally delays decision while a new round of responses and reply deadlines run."); *cf. Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135–36 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule . . . . We are no exception."); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (rule is a "discretionary doctrine" that "rests on principles of comity and sound judicial administration" and is intended "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result").

This is not the first time AAL USA has employed the tactic of requesting relief in one forum where a nearly identical proceeding on the same subject matter is

6

already pending in another forum. After Black Hall Aerospace filed a civil suit in Alabama state court seeking injunctive relief to enforce the Asset Purchase Agreement, *Black Hall Aerospace, Inc. v. AAL USA, Inc.*, Case No. 47-2016-901750 (Mad. Cty. Cir. Ct. Oct. 29, 2016), AAL USA filed a lawsuit in Jefferson County Circuit Court seeking injunctive relief as well. When the second case was removed to this Court, this Court ruled the two cases are "composed of substantially the same parties," are "considering substantially the same issues," and involve the "same fundamental conduct." Mem. Op., ECF No. 88, at 8 (May 30, 2017).[1]

Similarly, when Black Hall Aerospace moved for this Court to release its funds held in escrow, *see* Black Hall Motion for Release of Funds, ECF No. 69 (Mar. 7, 2017), AAL USA supported IberiaBank's separate interpleader complaint in Alabama state court and challenged Black Hall Aerospace's motion to dismiss that proceeding. *See* Tr. of Proceedings, ECF No. 61, at 29-30, 2:17-cv-0399-KOB (Oct. 2, 2017). Indeed, AAL USA and its affiliate AAL Group, Ltd. have now filed a complaint, counterclaim, or cross-claim against Black Hall and certain of its owners in six separate lawsuits in federal and state courts in Alabama, plus an arbitration in Dubai, United Arab Emirates (which was ultimately dismissed because of AAL USA and AAL Group's failure to pay the required filing fees). Almost all of these suits involve the same facts, the same parties, and the same theories of fraud.

7

This pattern of filing a multiplicity of motions and actions creates the risk of multiple inconsistent rulings, causes confusion for the parties, and wastes resources for everyone. To prevent this situation from arising again, this Court should deny AAL USA's motion to quash and allow the pending proceeding in the District of Columbia to proceed.

Black Hall filed its Motion to Compel in the District of Columbia pursuant to Rule 45, which takes into consideration that Holland & Knight and the attorneys who signed the affidavit in question are located in the District of Columbia. Black Hall recognizes that this Court, with its knowledge of the complete case, ultimately may be best-suited to decide the Motion to Compel. If Holland & Knight consents or the District of Columbia District Court approves, Black Hall will not object to transferring its Motion to Compel to this Court under Rule 45(f). This will remove any questions concerning jurisdiction over Holland & Knight for these purposes. At this stage, however, Black Hall simply requests that this Court deny AAL USA's Motion to Quash so that only one proceeding regarding the enforceability of its subpoena to Holland & Knight is pending.

## II. THE COURT SHOULD DENY AAL USA'S MOTION BECAUSE AAL USA HAS WAIVED ITS PRIVILEGE.

In addition to the procedural defects with AAL USA's filing, the Court should deny AAL USA's Motion to Quash because AAL USA has waived its attorney-

DOCSHSV\241795\1

client privilege and attorney work product as to the matters addressed in the subpoena to Holland & Knight. As the attached motion explains in more detail:

- On September 29, 2016, before signing the Asset Purchase Agreement at the heart of this dispute, Sirbu asked Holland & Knight to review the draft Asset Purchase Agreement (along with several collateral documents). *See* Ex. B, Black Hall Motion to Compel Exhibit 2.[1] He then consulted with Holland & Knight before revising and signing the agreement. *Id.* at Exhibits 3-4 to the Motion to Compel.

- Despite clear evidence to the contrary, AAL USA repeatedly has alleged, both in this litigation and in the Madison County Action, that Sirbu signed the Asset Purchase Agreement only "under duress and relying on [Black Hall Aerospace majority-owner Paul] Daigle's misrepresentations and fraudulent suppressions." *See* First Am. Compl., ECF No. 1-7, at 4 (Dec. 9, 2016); 2d Am. Compl., ECF No. 96, at 22 (June 13, 2017).

- Furthermore, in January 2017 AAL USA filed a motion for a temporary restraining order and preliminary injunction in the Madison County Action. *See* Ex. B, Black Hall Motion to Compel at 10-11. The motion "rel[ied] on" an affidavit from two Holland & Knight attorneys that incorrectly declared that the attorneys had "solely and exclusively" counseled AAL USA and Sirbu on a different issue. *Id.* at 11. AAL USA claimed in its motion that Holland & Knight had "testified" that the firm had not advised AAL USA on the sale. *Id.*

- By filing its motion and relying on the Holland & Knight affidavit, AAL USA voluntarily and affirmatively put its communications with Holland & Knight at issue and thereby waived any attorney-client privilege or attorney work product protections. *Id.* at 14-18. In other words, AAL USA has used Holland & Knight's testimony about its attorney-client advice as a sword in litigation, yet now uses the

---

[1] Concurrent with this filing, Black Hall is filing a Motion for Leave to File Under Seal so that the Court can see the full, unredacted version of its Motion to Compel and full versions of Exhibit 2 and Exhibit 3, which includes the emails between Holland & Knight and Sirbu before Sirbu revised and signed the Asset Purchase Agreement on September 29, 2016. AAL USA received both the redacted and unredacted version of Black Hall's Motion to Compel on January 18, 2018, before it filed the Motion to Quash. *See* Ex. C.

9

attorney-client privilege as a shield to avoid discovery of the same issue. *Id*.

- The advice provided by Holland & Knight to Sirbu on the agreement to sell AAL USA's assets goes directly to the issue of whether Sirbu and AAL USA were defrauded when Sirbu signed the Asset Purchase Agreement. *Id*. It would be manifestly unfair to allow AAL USA to assert—falsely—that Sirbu was never advised by independent counsel during this transaction, without allowing Black Hall an opportunity to take discovery of these claims. *Id*. at 16-17.

For these reasons, Black Hall is seeking an order compelling Holland & Knight to produce documents reflecting its communications with AAL USA and Sirbu on the Asset Purchase Agreement and collateral documents, as well as other evidence of Holland & Knight's work advising AAL USA and Sirbu on this issue, such as notes, engagement letters, invoices, and other records.

## III.  BLACK HALL'S MOTION TO COMPEL REFLECTS THE PARTIES' EFFORTS TO NARROW OR RESOLVE THE ISSUES.

Despite the hysterics of AAL USA's Motion, the reality is that Black Hall made several attempts to narrow or resolve the issues with Holland & Knight and AAL USA before filing its Motion to Compel, and the Motion to Compel reflects the agreements that were reached. As a result, the concerns raised by AAL USA in its Motion to Quash are unfounded.

On January 14, 2018, after receiving no substantive response from Holland & Knight for two months after service of the subpoena, Black Hall reached out to Holland & Knight and suggested a conference call to discuss the subpoena and try

10

to avoid the need for a court intervention.  On January 16, 2018, Black Hall participated in a conference call with counsel for AAL USA and Holland & Knight. During that call AAL USA asserted, as it had done in an earlier letter, that the subpoena requested privileged communications and that no waiver of the privilege had occurred.  In a follow-up call on January 18, Holland & Knight informed Black Hall that it does not have any documents responsive to Request 7 of the subpoena. Holland & Knight, however, informed Black Hall that it does have communications with the United States government that would be responsive to Request 9 and that it would produce those to Black Hall, subject to redactions for any privileged discussions between Holland & Knight and AAL USA in the same email chains. Holland & Knight also stated that it has invoices that are responsive to Request 13 and is willing to produce those with redactions.  Black Hall is willing to accept redactions of any attorney-client privileged or attorney work product portions of invoices that are responsive to Request 13.

In the same call on January 18, 2018, however, Holland & Knight confirmed that it did not intend to produce any documents, without a court order, that AAL USA was asserting as privileged.  Although Holland & Knight at that time had not yet located any documents responsive to Requests 1-6, it was clear from the exhibits attached to Black Hall's Motion to Compel that such documents did exist and that a

11

court order was necessary to establish that any privilege has been waived. On that basis, Black Hall filed its Motion to Compel.

In the final section of its Motion to Compel, Black Hall made clear that it is only seeking an order requiring production of documents in response to Requests 1-6 and 11-12. Black Hall is not seeking an order compelling production of documents in response to Requests 7-10 and 13 as long as Holland & Knight produces to Black Hall in a timely fashion any existing documents responsive to these requests and provides a log of any documents withheld from production of those requests.

AAL USA raises a concern that Black Hall is seeking all communications between Holland & Knight and Burr & Forman. This argument misconstrues the subpoena. Black Hall is not seeking all communications between Holland & Knight and Burr & Forman. It is only seeking those directly related to the preparation of the false affidavit. Beyond that one issue, if Holland & Knight produces communications with the U.S. government and other third parties (which are not privileged) and communications with AAL USA (where the privilege has been waived), Black Hall will accept redactions of emails where such communications were forwarded to Burr & Forman.

Similarly, AAL USA now raises a concern for the first time that the subpoena seeks irrelevant documents. That concern is easily dismissed as well. The subpoena seeks (i) non-privileged documents that will shed light on the reason why the U.S.

Army denied AAL USA access to its bases in September 2016, and the role Sirbu had in prompting that base access denial; and (ii) privileged documents that show that Sirbu had an opportunity to and in fact did consult with Holland & Knight before signing the Asset Purchase Agreement on September 29, 2016. Both categories of documents go directly to the heart of the issues in this case—whether Black Hall was justified in its efforts to sever ties with Sirbu to continue performance of its government contracts, and whether Black Hall fairly negotiated the Asset Purchase Agreement with AAL USA and Sirbu to achieve that end.

## IV. AAL USA'S MISSTATEMENTS CONTINUE.

The most troubling aspect of AAL USA's Motion to Quash is that it continues to perpetuate the false impression that Holland & Knight never advised AAL USA on the Asset Purchase Agreement. *See* AAL USA Motion to Quash at 8-9. Although AAL USA refers several times to Black Hall's Motion to Compel, and even attaches emails showing it received service of the Motion to Compel prior to filing its Motion to Quash, AAL USA never informs this Court that it has now received emails showing Holland & Knight did in fact advise AAL USA and Sirbu on the Asset Purchase Agreement. *See* Ex. B, Black Hall Motion to Compel Exhibits 2-4. Rather, AAL USA continues to rely on obviously incorrect statements by Holland & Knight that this never occurred.

13

The demonstrably false and misleading representations from AAL USA and its counterpart AAL Group, Ltd. have become a serious concern in this litigation.[2] In light of the ongoing proceeding in the U.S. District Court for the District of Columbia, and the already heavy burden the parties have placed on this Court with the high volume of filings, Black Hall is not seeking sanctions for AAL USA's misconduct at this time. However, Black Hall reserves the right to do so after this Court has had a chance to review the filings in detail and the issue of the privilege waiver has been resolved.

## V. CONCLUSION

For these reasons, Black Hall respectfully requests that this Court deny AAL USA's Motion to Quash.

January 22, 2018                              Respectfully submitted,

/s/ **Benjamin R. Little**
Roderic G. Steakley
Benjamin R. Little
**SIROTE & PERMUTT, P.C.**
305 Church Street, Suite 800
Huntsville, Alabama 35801
Telephone:  (256) 536-1711
Facsimile:  (256) 518-3681
Email:          rsteakley@sirote.com
                    blittle@sirote.com

---

[2] In multiple recent filings, Black Hall and related parties have been forced to correct incorrect or false statements by AAL USA and its counterpart AAL Group, Ltd. *See, e.g.*, ECF No. 193 at 3, 16-17; ECF No. 224 at 2, 8-11.

14

Thomas A. Woodall
J. Rushton McClees
Joshua L. Hornady
**SIROTE & PERMUTT, P.C.**
2311 Highland Ave. S., Suite 500
Birmingham, AL 35205
Telephone: (205) 930-5100
Facsimile: (205) 930-5101
Email: twoodall@sirote.com
rmcclees@sirote.com
jhornady@sirote.com


Todd A. Bromberg
Mark B. Sweet
Stephen J. Obermeier
**WILEY REIN LLP**
1776 K Street, N.W.
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
Email: tbromberg@wileyrein.com
msweet@wileyrein.com
sobermeier@wileyrein.com

James H. Richardson
**RICHARDSON MAPLES, P.C.**
301 East Holmes Avenue, Suite 100
P.O. Box 18667 [35804-8667]
Huntsville, Alabama 35801
Telephone: (256) 533-2440
Facsimile: (256) 533-2441
Email: jim@richardsonmaples.com

*Counsel for Black Hall, LLC and Black Hall
Aerospace, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of January, 2018, I served a copy of the

foregoing on the following counsel of record via the Court's ECF system:

Victor Hayslip (*vhayslip@burr.com*)
Kip N. Nesmith (*nesmith@burr.com*)
Benjamin B. Coulter (*bcoulter@burr.com*)
Fob James, IV (*fjames@burr.com*)
BURR & FORMAN LLP
420 North 20th Street
3400 Wells Fargo Tower
Birmingham, Alabama 35203

Richard A. Freese
Freese & Goss, PLLC
1901 6th Avenue No, Suite 3120
Birmingham, AL 35203
rich@freeseandgoss.com

*Counsel for AAL USA, Inc., AAL Group, Ltd., Saul Kirsch and Oleg Sirbu*

Michael J Douglas
LEAK & DOUGLAS PC
The John A. Hand Building
17 20th Street North, Suite 200
Birmingham, AL 35203
mdouglas@leakdouglas.com

Oliver Benton Curtis, III
BROAD AND CASSEL
2 South Biscayne Boulevard,
Suite 2100
Miami, FL 33131
bcurtis@broadandcassel.com

*Counsel for Keith Woolford*

/s/ **Benjamin R. Little**
Benjamin R. Little

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| AAL USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-cv-02090-KOB |
| | ) |
| BLACK HALL, LLC, *et al.*, | ) This Document Relates to Both Cases |
| | ) |
| | ) |
| Defendants. | ) |
| AAL GROUP, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-00399-KOB |
| | ) |
| BLACK HALL AEROSPACE, INC., *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Alabama

| | | |
|---|---|---|
| AAL USA, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:16-cv-02090-KOB |
| Black Hall, LLC, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Holland & Knight, LLP

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A for list of requests.

| Place: Wiley Rein LLP<br>Attn: Todd Bromberg<br>1776 K Street NW, Washington, DC 20006 | Date and Time:<br>12/08/2017 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 11/17/2017

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Black Hall, LLC and Black Hall Aerospace, Inc _____ , who issues or requests this subpoena, are:

Benjamin R. Little, Sirote & Permutt, PC, 305 Church St., Ste 800, Huntsville, AL, blittle@sirote.com (256) 518-3666

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:16-cv-02090-KOB

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

1.　All documents or communications reflecting or relating to the Asset Purchase Agreement and related documents (including the Assignment and Assumption Agreement, the Bill of Sale, and the Unanimous Consent of all of the Shareholders and all of the Members of the Board of Directors of AAL USA, Inc.) that were executed between AAL USA, Inc. ("AAL USA") and Black Hall Aerospace, Inc. on or about September 29, 2016 (collectively the "APA").

2.　All documents or communications reflecting Holland & Knight's review of, consideration of, advice on, or discussion about the APA.

3.　All communications between Oleg Sirbu and any attorney or employee of Holland & Knight regarding or relating to the APA.

4.　All documents which reflect Holland & Knight's comments, notes, or advice regarding the APA.

5.　All documents related to any unsigned drafts of agreements to transfer assets between (1) AAL USA or Oleg Sirbu and (2) Black Hall Aerospace, Inc. or Paul Daigle, including but not limited to any assignment of stock, release from non-compete agreement, assignment and assumption of a lease, assignment of a "legacy" contract, or novation of a government contract.

6.　All documents or communications related to the affidavits of Ronald S. Perlman and Ronald Oleynik attached hereto as Exhibit B, including without limitation communications to or from any attorney or employee of Burr & Forman, LLP regarding AAL USA, AAL Group, Ltd. ("AAL Group"), Oleg Sirbu, the affidavits attached hereto, or any litigation to which Oleg Sirbu, AAL USA, or AAL Group are parties.

7.　All communications to or from AAL USA, AAL Group, Oleg Sirbu, or any representative of any one of them regarding actual or potential claims against Holland & Knight or any of its attorneys or employees.

## EXHIBIT A

8.     All non-privileged documents or communications to or from anyone regarding AAL USA's and/or Oleg Sirbu's ban from or denial of access to U.S. military bases.

9.     All documents or communications which Holland & Knight, Oleg Sirbu, or AAL USA submitted to or received from the United States of America, or any branch, department, agency, or other subdivision or representative thereof regarding AAL USA's and/or Oleg Sirbu's ban from or denial of access to U.S. military bases.

10.     All non-privileged documents or communications regarding any investigation of Oleg Fidelskiy, AAL Group, AAL USA, and/or Oleg Sirbu conducted or being conducted by the United States of America, or any branch, department, agency, or other subdivision or representative thereof.

11.     All engagement letters or communications signed or approved by AAL USA, AAL Group, or Oleg Sirbu reflecting the scope of any engagement of Holland & Knight from September 23, 2016 through October 31, 2016.

12.     All invoices of Holland & Knight reflecting work performed for AAL USA, Oleg Sirbu, or AAL Group regarding or relating to the APA.

13.     All invoices of Holland & Knight reflecting work performed for AAL USA, Oleg Sirbu, or AAL Group regarding or relating to AAL USA's and/or Oleg Sirbu's ban from or denial of access to U.S. military bases or any investigation of Oleg Fidelskiy, AAL Group, AAL USA, and/or Oleg Sirbu conducted or being conducted by the United States of America, or any branch, department, agency, or other subdivision thereof.

DOCUMENT 278



## AFFIDAVIT

Without waiving any other attorney-client privilege, Ronald S. Perlman and

Ronald Oleynik hereby affirm that Holland & Knight, LLP counseled AAL USA, Inc. (and Oleg

Sirbu as owner) solely and exclusively with regard to its ban from Kandahar and Bagram air

bases, in order to assist in identifying and resolving whatever issues had precipitated the ban.

_____
Ronald S. Perlman

_____
Ronald Oleynik

Subscribed and sworn to before me this 5th day of December, 2016 by Ronald S.
Perlman.

_____
Notary Public

**RUTH A. THOMAS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2021

Subscribed and sworn to before me this 5th day of December, 2016 by Ronald Oleynik.

_____
Notary Public

**RUTH A. THOMAS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2021

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:16-cv-02090-KOB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Holland & Knight LLP

on *(date)* 11/17/2017.

☒ I served the subpoena by delivering a copy to the named person as follows: Paul Kiernan, Holland & Knight LLP, 800 17th St NW, Washington D.C. 20006     on *(date)* 11/17/2017 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $     for travel and $     for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: 11/17/2017

*Server's signature*

Josephine Gibbens, Legal Assistant
*Printed name and title*

1827 Riggs Pl NW, Apt. 1, Washington DC 20009
*Server's address*

Additional information regarding attempted service, etc.:

# Exhibit B

Stamp and Return

RECEIVED

JAN 1 8 2018

Clerk, U.S. District and
Bankruptcy Courts

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**BLACK HALL, LLC and**
**BLACK HALL AEROSPACE, INC.,**

v.

**HOLLAND & KNIGHT, LLP**

### BLACK HALL, LLC AND BLACK HALL AEROSPACE, INC.'S
### MOTION TO COMPEL

Black Hall, LLC and Black Hall Aerospace, Inc. (collectively, "Black Hall") hereby

move for an order compelling Holland & Knight LLP ("Holland & Knight") to produce

documents requested by a subpoena issued under Federal Rule of Civil Procedure 45. This

motion is based on a supporting Memorandum of Points and Authorities, its accompanying

exhibits, and any oral argument the Court may allow.

As required by Local Civil Rule 7(m), the parties have made an effort to meet and confer

in good faith, including a discussion by phone on January 15, 2018, some follow-up emails, and

another phone discussion on January 18, 2018. The parties were unable to resolve this dispute

without judicial intervention. Therefore, Black Hall expects this motion to be opposed.

1

Dated: January 18, 2018

Respectfully submitted,

/s/ McC

Todd A. Bromberg (D.C. Bar # 472554)
Mark B. Sweet (D.C. Bar # 490987)
Stephen J. Obermeier (D.C. Bar # 978122)
**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
Phone: (202) 719-7000
Facsimile: (202) 719-7049

OF COUNSEL:

Roderic G. Steakley
Benjamin R. Little
**SIROTE & PERMUTT, P.C.**
305 Church Street, Suite 800
Huntsville, Alabama 35801
Telephone:    (256) 536-1711
Facsimile:    (256) 518-3681
Email: rsteakley@sirote.com
           blittle@sirote.com

Thomas A. Woodall
J. Rushton McClees
Joshua L. Hornady
**SIROTE & PERMUTT, P.C.**
2311 Highland Ave. S., Suite 500
Birmingham, AL 35205
Telephone:    (205) 930-5100
Facsimile:    (205) 930-5101
Email: twoodall@sirote.com
rmcclees@sirote.com
jhornady@sirote.com

James H. Richardson
**RICHARDSON MAPLES, P.C.**
301 East Holmes Avenue, Suite 100
P.O. Box 18667 [35804-8667]
Huntsville, Alabama 35801
Telephone: (256) 533-2440
Facsimile: (256) 533-2441
Email: jim@richardsonmaples.com

*Counsel for Black Hall Aerospace, Inc. and
Black Hall, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify on January 18, 2018, I served a copy of the foregoing by email and overnight mail on the following:

Victor Hayslip (*vhayslip@burr.com*)
Kip N. Nesmith (*nesmith@burr.com*)
Benjamin B. Coulter (*bcoulter@burr.com*)
Fob James, IV (*fjames@burr.com*)
BURR & FORMAN LLP
420 North 20th Street
3400 Wells Fargo Tower
Birmingham, Alabama 35203

Richard A. Freese
Freese & Goss, PLLC
1901 6th Avenue No, Suite 3120
Birmingham, AL 35203
rich@feeseandgoss.com

*Counsel for AAL USA, Inc., AAL Group, Ltd., Saul Kirsch and Oleg Sirbu*

Philip T. Evans
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, DC 20006
philip.evans@hklaw.com

*Counsel for Holland & Knight LLP*

Michael J Douglas
LEAK & DOUGLAS PC
The John A. Hand Building
17 20th Street North, Suite 200
Birmingham, AL 35203
mdouglas@leakdouglas.com

Oliver Benton Curtis, III
BROAD AND CASSEL
2 South Biscayne Boulevard,
Suite 2100
Miami, FL 33131
bcurtis@broadandcassel.com

*Counsel for Keith Woolford*

/s/ Mark Sweet

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BLACK HALL, LLC and**
**BLACK HALL AEROSPACE, INC.,**

Civil No. _____

**v.**

**REDACTED**

**HOLLAND & KNIGHT LLP**

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF BLACK HALL, LLC AND
## BLACK HALL AEROSPACE, INC.'S MOTION TO COMPEL

Black Hall, LLC and Black Hall Aerospace, Inc. (collectively, "Black Hall") hereby

move for an order compelling Holland & Knight LLP ("Holland & Knight") to produce

documents requested by a subpoena issued under Federal Rule of Civil Procedure 45. *See* Ex. 1,

Subpoena to Holland & Knight (Nov. 17, 2017) ("Subpoena").

This motion to compel arises from multiple ongoing litigations in which Black Hall and

another company, AAL USA, Inc., are disputing, among other things, the enforceability of an

agreement signed in September 2016 to sell AAL USA's assets to Black Hall. Black Hall

contends that the agreement was valid and should be enforced, while AAL USA contends the

agreement was fraudulent and should be voided. One of the disputed factual issues in the cases

is whether Oleg Sirbu, the majority owner of AAL USA at the time of the sale, was represented

by independent outside counsel at the time of the sale. In particular, the parties dispute whether

the law firm of Holland & Knight, which was outside counsel to AAL USA at the time of the

sale, reviewed a draft of the agreement and advised Sirbu on revisions to it before he signed.

In January 2017, AAL USA filed a motion for a temporary restraining order and

preliminary injunction in which it relied on an affidavit from two Holland & Knight attorneys.

The Holland & Knight attorneys, in a signed and notarized document that was an exhibit to AAL USA's motion, declared that they "solely and exclusively" counseled AAL USA and Sirbu on a different issue. As emails attached as exhibits herein show, that statement was incorrect—Sirbu did, in fact, ask Holland & Knight to review the draft agreement to sell AAL USA's assets to Black Hall (along with several collateral documents) and consulted with Holland & Knight before revising and signing the agreement. Nonetheless, AAL USA claimed in its motion that Holland & Knight had "testified" that the firm had not advised AAL USA on the sale, and AAL USA has alleged that Sirbu had signed the agreement only "under duress and relying on [Black Hall Aerospace majority-owner Paul] Daigle's misrepresentations and fraudulent suppressions."

By filing its motion and relying on the Holland & Knight affidavit, AAL USA voluntarily and affirmatively put its communications with Holland & Knight at issue and thereby waived any attorney-client privilege or attorney work product protections. AAL USA has used Holland & Knight's testimony about its attorney-client advice as a sword in litigation, yet now uses the attorney-client privilege as a shield to avoid discovery of the same issue. The advice provided by Holland & Knight to Sirbu on the agreement to sell AAL USA's assets goes directly to the issue of whether Sirbu was defrauded when he signed the agreement. It would be manifestly unfair to allow AAL USA to assert—falsely—that Sirbu was never advised by independent counsel during this transaction, without allowing Black Hall an opportunity to take discovery of these claims.

Finally, Holland & Knight has failed in its obligations to raise timely objections to Black Hall's subpoena under the Federal Rules of Civil Procedure. The subpoena was served on November 17, 2017. Even with a two-week extension provided by Black Hall, Holland & Knight should have provided objections by December 15, 2017 and a document production by

2

December 22, 2017.  Holland & Knight did not any make any objections or produce any documents in response to Black Hall during this period.

On January 14, 2018, Black Hall reached out to Holland & Knight and suggested a conference call to discuss the subpoena and try to avoid the need for a court intervention.  On January 16, 2018, Black Hall participated in a conference call with counsel for AAL USA and Holland & Knight.  During that call AAL USA asserted, as it had done in an earlier letter, that the subpoena requested privileged communications and that no waiver of the privilege had occurred.  In a follow-up phone call between Black Hall and Holland & Knight on January 18, 2018, Holland & Knight confirmed that it did not intend to produce any documents without a court order that AAL USA was asserting as privileged.  Although Holland & Knight was not sure at that time what documents it had that were responsive to each request, it is clear from the exhibits attached to this motion that such documents do exist and that a court order is necessary to establish that any privilege has been waived.

For all of these reasons, Black Hall respectfully requests that the Court order Holland & Knight to produce documents in compliance with the subpoena.

## I.    BACKGROUND

### A.    AAL USA Is Denied Access to a Military Base Overseas.

In 2016, AAL USA was a small business based in Huntsville, Alabama providing aviation services to the United States government, mostly through subcontracts with a larger company.  AAL USA was minority-owned and managed by Paul Daigle, who was based in Huntsville, Alabama, and majority-owned by Oleg Sirbu, who was based in the United Arab Emirates.  AAL USA's subcontract involved providing services on U.S. Army bases in Afghanistan.

3

On September 23, 2016, the U.S. Army denied AAL USA access to military bases outside the continental United States. The U.S. Army's letter stated that AAL USA could not perform certain requirements for one of AAL USA's contracts and required AAL USA to cease performance on the task order and leave any overseas U.S. military bases it was supporting under the contract within ten days. AAL USA was informed that the specific underlying reasons for the base access denial were classified. However, after AAL USA presented several options for remedying the issue to its prime contractor, which in turn presented those options to the U.S. Army, the U.S. Army agreed to allow AAL USA to continue performance of the contract if Sirbu was removed from the company.

To achieve this end, and in consultation with AAL USA's outside counsel at Maynard Cooper & Gale, Daigle and Sirbu agreed that AAL USA would sell its assets to Black Hall Aerospace and that all of AAL USA's employees would become employees of Black Hall Aerospace. Black Hall Aerospace was a separate company owned by Daigle and other managers at AAL USA.[1] The purpose of the transaction was to remove Sirbu from any role in the future performance of the contracts and to sever any alleged influence or connection to Sirbu's other company, AAL Group, Ltd.

## B. Holland & Knight Advises AAL USA's Majority Owner Sirbu in Connection with the Asset Purchase Agreement.

On September 29, 2016, an attorney from Maynard Cooper provided a draft Asset Purchase Agreement to Daigle and Sirbu to review and potentially sign. *See* Ex. 2, Email from Jon Levin to Oleg Sirbu and Paul Daigle (Sep. 29, 2016). Additionally, Maynard Cooper provided drafts of three collateral documents: an Assignment and Assumption Agreement, an AAL board resolution authorizing the sale, and a Bill of Sale. *Id.* The Maynard Cooper attorney

---

[1] Black Hall, LLC is a wholly-owned subsidiary of Black Hall Aerospace.

suggested signing the agreements "or rais[ing] any issues you have with these documents as quickly as possible." *Id.* (emphasis removed).

Upon receiving the email, Sirbu forwarded the draft documents to Ronald Oleynik at Holland & Knight, writing: ████████████████████████████ Ex. 2, Email from Oleg Sirbu to Ronald Oleynik (Sep. 29, 2016) (emphasis added). Oleynik responded: ████ ████ Ex. 3 (emphasis added).[2] Sirbu then followed up, asking Oleynik, ████████████ *Id.*

After reviewing the drafts, Oleynik sent revised versions of the agreements, complete with Sirbu's signature, back to Maynard Cooper, stating: "Oleg asked me to forwarded [sic] these to you." Ex. 4, Email from Ronald Oleynik to Jon Levin. The revised versions circulated by Holland & Knight contained changes to multiple provisions in the Asset Purchase Agreement, including the list of assets being purchased and elements of the purchase price. *Compare* Ex. 2 Asset Purchase Agreement ¶¶ 1.01, 1.04 *with* Ex. 4, Asset Purchase Agreement ¶¶ 1.01, 1.04. Daigle then signed the Asset Purchase Agreement and related documents as reviewed and revised by Holland & Knight. *See* Ex. 5, Email from Paul Daigle to Oleg Sirbu and Jon Levin (Sep. 29, 2016) (attaching executed agreements).

Within a few weeks of the signed Asset Purchase Agreement, Sirbu began to renege on the deal, refusing to sign additional collateral documents that would have further effectuated the transaction and refusing to accept installment payments.

---

[2] Although Black Hall acquired the Holland & Knight privilege from AAL USA through the Asset Purchase Agreement and has the ability to waive it any time it chooses, *see* section II.B below, and even though this court may determine that these emails are not privileged or that the privilege has be waived, in an abundance of caution Black Hall has redacted the public version of this filing. Black Hall is filing a motion for leave to file an unredacted version of this memorandum and certain supporting exhibits under seal.

## C. Black Hall and AAL Engage in Litigation.

On October 29, 2016, Black Hall filed a civil suit in Alabama state court seeking injunctive relief to enforce the agreement. The case is titled *Black Hall Aerospace, Inc. v. AAL USA, Inc.*, Case No. 47-2016-901750 (Mad. Cty. Ala. Oct. 29, 2016) (the "Madison County Action"). On November 30, 2016, AAL filed an answer and counterclaim in the Madison County Action.

Additionally, in retaliation, AAL USA and Sirbu's other company, AAL Group, Ltd., began a scorched-earth campaign against Black Hall and its owners. Between AAL USA and AAL Group, they proceeded to file complaints, counterclaims, or crossclaims against Black Hall and certain of its owners in six separate lawsuits in federal and state courts in Alabama, plus an arbitration in Dubai, United Arab Emirates. Almost all of the lawsuits allege that Black Hall fraudulently obtained assets that at one time belonged to AAL USA.[3]

One of the lawsuits filed by AAL USA, *AAL USA, Inc. v. Black Hall Aerospace, Inc.*, No. CV 2016-904241 (Jefferson Cty. Cir. Ct.), was later removed to federal court. That case is now titled *AAL USA, Inc. v. Black Hall LLC*, No. 2:16-cv-02090-KOB (N.D. Ala. Dec. 30, 2016) (the "AAL USA Federal Action"). The AAL USA Federal Action has been consolidated for discovery purposes with one of the related cases, *AAL Group, Ltd. v. Black Hall Aerospace, Inc.*, No. 2:17-cv-00399-KOB (N.D. Ala. Mar 14, 2017) (the "AAL Group Federal Action"). Both federal cases are before Chief Judge Bowdre of the Northern District of Alabama. The subpoena in dispute here was issued under these consolidated federal cases. *See* Ex. 1, Subpoena at 1.

---

[3] In the one complaint that does not allege that Black Hall fraudulently obtained AAL USA's assets, Sirbu and AAL Group ironically take the opposite position, alleging that the Asset Purchase Agreement was legitimate and Black Hall now owes all of the debts that AAL USA owed to AAL Group before the transaction. *See AAL Group, Ltd. v. Black Hall Aerospace, Inc. et al.*, No. 2:17-cv-00399-KOB (N.D. Ala.). A motion to dismiss that complaint is currently pending before the Northern District of Alabama.

6

AAL USA's counterclaim in the Madison County Action and its second amended

complaint in the AAL USA Federal Action make nearly identical allegations alleging that Black

Hall and its principals participated in a "Takeover Scheme" culminating with the fraudulent

execution of the Asset Purchase Agreement. The Northern District of Alabama has already

concluded that these cases are "substantially the same":

> [T]he court concludes that the Madison County case and this case are
> composed of substantially the same parties. The two cases are also
> considering substantially the same issues . . . . AAL USA contends the
> Madison County action is about the APA while this action is about Mr.
> Daigle and Mr. Woolford's acts. But the Madison County case is
> litigating the same allegedly fraudulent conduct—misrepresentations
> surrounding the APA. AAL USA may be seeking different damages
> (from Black Hall Aerospace versus Mr. Daigle and Mr. Woolford
> individually) in the two actions, but the same fundamental conduct is at
> issue.

Mem. Op., AAL USA Federal Action (May 30, 2017), ECF No. 88 at 8.

## D. AAL USA Files an Affidavit by Holland & Knight in Support of an AAL USA Motion.

AAL USA has alleged that Sirbu signed the Asset Purchase Agreement "under duress

and relying on Daigle's misrepresentations and fraudulent suppressions." *See* First Am. Compl.

at 4 (Dec. 9, 2016), AAL USA Federal Action (originally filed in Jefferson County Court and

removed to federal court); 2d Am. Compl. at 22, AAL USA Federal Action (June 13, 2017),

ECF No. 96. On January 3, 2017, AAL USA and Saul Kirsch[4] filed a motion for a temporary

restraining order and preliminary injunction against Black Hall Aerospace in the Madison

County Action. *See* Ex. 6, AAL USA Motion for TRO and PI (Jan. 3, 2017).[5]

---

[4] Kirsch is a minority owner of Black Hall Aerospace who defected to AAL USA shortly after the Asset Purchase Agreement and now serves as the Vice President of AAL USA.

[5] The AAL USA motion, including a complete set of exhibits, is 289 pages. For efficiency, Black Hall has attached the motion and the relevant supporting exhibit, the affidavit of the Holland & Knight attorneys. If the Court would like a full set of the exhibits to AAL USA's motion, Black Hall is happy to provide a copy.

"In support of their Motion," AAL USA and Kirsch "rel[ied] on," among other things,

the affidavit of two Holland & Knight attorneys, Ronald Perlman and Ronald Oleynik. *Id.* at 1.

The Holland & Knight attorneys stated:

> Without waiving any other attorney-client privilege, Ronald S.
> Perlman and Ronald Oleynik hereby affirm that Holland & Knight,
> LLP counseled AAL USA, Inc. (and Oleg Sirbu as owner) solely
> and exclusively with regard to its ban from Kandahar and Bagram
> air bases, in order to assist in identifying and resolving whatever
> issues had precipitated the ban.

*Id.* at 23, Affidavit of Ronald Perlman and Ronald Oleynik.

In its motion, AAL USA claimed "the law firm that [then-Black Hall Chief Financial

Officer Keith] Woolford claims represented AAL in the APA, Holland & Knight, has *testified*

that it only represents AAL with respect to contracts with the United States Government." Ex. 6

at 9. (emphasis added). AAL USA used the Holland & Knight affidavit as evidence supporting

its request for injunctive relief and as a basis to undermine the credibility of one of Black Hall's

witnesses who disputed this claim.

## E.   Black Hall Issues a Subpoena to Holland & Knight.

On November 17, 2017, after mediation between the parties proved unsuccessful, Black

Hall served a subpoena on Holland & Knight requesting documents related to the Asset Purchase

Agreement and other non-privileged documents.  The subpoena had a response deadline of

December 8, 2017. *See* Ex. 1, Subpoena. On November 30, 2017, at AAL USA's request, *see*

Ex. 7, Black Hall provided Holland & Knight with a two-week extension for responding to the

subpoena in light of renewed settlement negotiations between Black Hall and AAL USA. *See*

Ex. 8, Emails between Mark Sweet and Paul Kiernan (Nov. 30, 2017). Holland & Knight did not

object to the subpoena. Besides an acknowledgement of the extension, Holland & Knight did not respond to the subpoena during that period.[6]

On January 4, 2018, counsel for AAL USA requested that Black Hall withdraw the subpoena to Holland & Knight because the subpoena sought documents protected by attorney-client privilege or attorney work product doctrine. *See* Ex. 9, Letter from Fob James to Mark Sweet (Jan. 4, 2018). On January 16, 2018, counsel for Black Hall, AAL USA, and Holland & Knight participated in a conference call to determine whether Holland & Knight intended to comply with the subpoena and whether there was any way to resolve or narrow the issues raised by AAL USA without an order from the court. During that call AAL USA reasserted that the subpoena requested privileged communications and that no waiver of the privilege had occurred. Holland & Knight agreed to inform the parties whether it had any documents responsive to the subpoena by January 18, 2018. *See* Ex. 11, Emails between Mark Sweet to Philip Evans and Victor Hayslip (Jan. 16-17, 2018).

In a follow-up phone call between Black Hall and Holland & Knight on January 18, 2018, Holland & Knight confirmed that it did not intend to produce any documents that AAL USA was asserting as privileged without a court order. Although Holland & Knight was not sure at that time what documents it had that were responsive to each request, it is clear from the exhibits attached to this motion that such documents do exist and that a court order is necessary to establish that any privilege has been waived.

---

[6] Black Hall, AAL USA and AAL Group reached a separate agreement to suspend discovery between them until January 5, 2018 while they negotiated a settlement agreement. *See* Ex. 9, Email from Mark Sweet to Victor Hayslip and Kip Nesmith (Dec. 12, 2017). Although Black Hall provided a two-week extension to Holland & Knight, when that extension expired, Holland & Knight never reached out to see whether settlement talks were continuing or if a further extension was warranted. Burr & Forman, which requested a withdrawal of the subpoena on January 4, 2018, does not represent Holland & Knight.

9

## II.    ARGUMENT

### A.    Holland & Knight Has Failed to Make Timely Objections or Comply with the Subpoena.

Black Hall served its subpoena on November 17, 2017.  Objections to the subpoena were due on December 1, 2017, *see* Fed. R. Civ. P. 45(d)(2)(B), and responses were due on December 8, 2017.  With the two-week extension provided by Black Hall, objections were due December 15, 2017 and responses were due December 22, 2017.  Holland & Knight did not provide any objections or responses to the subpoena during this period.  Holland & Knight has therefore failed to meet its obligations under Rule 45(d)(2)(B) and Rule 45(e)(2)(A).  For these reasons alone, this Court should compel compliance with the subpoena and hold Holland & Knight in contempt for failing without adequate excuse to obey the subpoena.  *See* Fed. R. Civ. P. 45(g).

### B.    Black Hall Owns Any Privilege Existing Before the Asset Purchase Agreement.

As a preliminary matter, it is important to understand that Black Hall—not AAL USA— holds the attorney-client and work product privileges up through September 29, 2016.  As courts have emphasized, the transfer of a substantial portion of a company's assets, particularly where that transfer leads to new management and practical control of the business, results in a transfer of authority over all privileges.  *See, e.g., Gilday v. Kenra, Ltd.*, No. 1:09-cv-00229-TWP-TAB, 2010 WL 3928593, at *2 (S.D. Ind. Oct. 4, 2010) (explaining that transfer of "substantially all" of a corporation's assets transfers control of the corporation, including authority to assert the attorney-privilege); *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) ("If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well."); *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 248 (W.D.N.Y. 2009) (concluding that a privilege will transfer to a

10

successor entity when (1) the asset transfer is accompanied by a transfer of business control, and (2) the management of the acquiring corporation continues the business of the selling corporation).

Under the terms of the Asset Purchase Agreement, Black Hall Aerospace acquired "all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill)." Ex. 5, Asset Purchase Agreement (Sep. 29, 2016) § 1.01; *see also* § 1.02 ("Excluded Assets. None."). As a result, Black Hall acquired all of AAL USA's rights to attorney-client privilege up to that point. Therefore, neither Holland & Knight nor AAL USA has any basis to object to the production of any privileged documents up through September 29, 2016, the date of the Asset Purchase Agreement.

### C.  AAL USA Has Waived Its Attorney-Client Privilege.

Even if this Court is not yet able to determine who owns the privilege, it is clear that AAL USA has waived any attorney-client privilege by putting the privilege at issue in the litigation against Black Hall for AAL USA's benefit. A waiver occurs when a party uses the privilege to prejudice its opponent's case. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417-18 (11th Cir.). A client can waive the attorney-client privilege expressly or implicitly. *Id.* at 1417. Implied waiver, also known as the "at issue" doctrine or the "offensive use doctrine," is based on "the premise that the attorney-client privilege cannot be used as both a sword and a shield." *In re Mongelluzzi*, 568 B.R. 702, 710 (Bankr. M.D. Fla. 2017) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *see also Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 518, 522 (D.D.C. 2005) ("The purpose of the implied waiver doctrine is to prevent an abuse of the privilege, that is, to prevent the confidentiality protected by the privilege from being used as a tool for manipulation of the truth-seeking process.") (internal citations and quotations omitted); *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762

11

(11th Cir. 1987) (emphasizing that the attorney-client privilege "was intended as a shield, not a sword.") (internal citation omitted).

In other words, a party waives the attorney-client privilege when it "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Cox*, 17 F.3d at 1417 (internal citation omitted); *see also Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009) (stating that "clients are deemed to waive the privilege when they place privileged information at issue through some affirmative act for their own benefit."); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (explaining that a client may impliedly waive the privilege by "plac[ing] otherwise privileged matters in controversy").

Here, in support of a motion for a temporary restraining order, AAL USA publicly filed an affidavit from two Holland & Knight partners describing the scope of that firm's representation of AAL USA. *See* Ex. 6 at 22, Affidavit Ronald Perlman and Ronald Oleynik. The affidavit denied that Holland & Knight played any role in advising Sirbu on the Asset Purchase Agreement. *Id.* (affirming that Holland & Knight "counseled AAL USA, Inc. (and Oleg Sirbu as owner) solely and exclusively with regard to its ban from Kandahar and Bagram air bases."). Characterizing the Holland & Knight affidavit as "testimony," AAL USA affirmatively used that affidavit to undermine the credibility of a Black Hall witness, to demand an immediate inspection of Black Hall records, and most importantly, in a fraud case, to create the false impression that Sirbu was not advised by separate and independent outside counsel before signing the Asset Purchase Agreement in September 2016. By putting Holland & Knight's representation at issue, AAL USA has waived the attorney-client privilege.

12

Indeed, even Holland & Knight seems to recognize that it has at least partially waived the attorney-client privilege by providing this affidavit for AAL USA's affirmative use in the prior litigation. *See id.* (stating in the first sentence of its affidavit, "Without waiving any *other* attorney-client privilege . . ."). Courts have consistently held that a waiver of the privilege "extends to *all other communications* relating to the same subject matter." *In re Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994) (emphasis added); *see also Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) ("[One who] voluntarily discloses part of an attorney-client conversation... may have waived confidentiality—and thus the attorney client privilege—for the rest of that conversation *and* for any conversations related to the same subject matter."); *In re Sealed Case*, 877 F.2d 976, 980–81 (D.C. Cir. 1989) ("[W]aiver of the privilege in an attorney-client communication extends 'to all other communications relating to the same subject matter.'") (internal citation omitted). And, a waiver need not be intentional to trigger an entire subject-matter waiver. *See, e.g., In re Sealed Case*, 877 F.2d at 980 (finding that inadvertent disclosures can result in a subject-matter waiver). Thus, Holland & Knight's discussion of the *scope* of its representation waives all materials related to that representation.

Furthermore, it would be manifestly unfair if Black Hall did not have an opportunity to take discovery of Holland & Knight's files on this subject. Holland & Knight has provided an affidavit claiming that it "solely and exclusively" counseled AAL USA and Sirbu on the base access ban. Ex. 6 at 23, Affidavit Ronald Perlman and Ronald Oleynik. However, as Exhibits 2-4 clearly show, Sirbu asked Holland & Knight to review the Asset Purchase Agreement before Sirbu signed it, Sirbu spoke with Holland & Knight, and then Holland & Knight revised the agreement before returning it to Maynard Cooper and Daigle. This strongly suggests that Holland & Knight's affidavit was, at best, misleading and, at worst, simply false. Moreover, it

13

demonstrates that Sirbu did have an opportunity to consult with independent outside counsel before signing anything.[7]  Since the validity of the Asset Purchase Agreement is one of the ultimate issues in the litigation between Black Hall and AAL USA, and the ability of Sirbu to consult with independent outside counsel before signing the agreement is a material fact in this dispute, Holland & Knight should be compelled to produce the documents on this subject requested by the subpoena.[8]

### D.    AAL USA Has Waived Its Attorney Work Product Protection.

The at-issue waiver "arises in both the attorney-client privilege and work-product doctrine scenarios." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 286 F.R.D. 661, 664 (S.D. Fl. 2012); *see also Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 255 (D.D.C. 2013) (finding that the plaintiff placed attorney work product in underlying litigation "at issue" and waived work product protection by bringing an indemnification lawsuit seeking reimbursement of attorney's fees).  And, much like an "at issue" waiver of the attorney-client privilege, "[a] party who selectively and deliberately discloses work product to gain a tactical advantage during litigation waives the protection as to the entire subject matter of the disclosure." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 288 F.R.D. 222, 226 (D.D.C. 2012).  For example, in *Bowles v. National Association of Home Builders*, the defendant purposefully disclosed opinion work product that supported its argument, yet refused to disclose work product that

---

[7] Although not the subject of this motion, Sirbu also consulted with an attorney at his other company, AAL Group, Ltd., before signing the Asset Purchase Agreement.

[8] As discussed above in section I.B of this memorandum, Black Hall has discovered emails between AAL USA and Holland & Knight suggesting that Holland & Knight's affidavit regarding the scope of its legal representation is false.  If the Court determines that Holland & Knight's affidavit is indeed false, and that AAL USA misled the Madison County Court on this issue, this provides an additional basis for the waiver of both the attorney-client and work product privileges.  *See Int'l Med. Grp., Inc. v. Walker*, No. 1:08–cv–923–JMS–TAB, 2011 WL 1752101, at *3 (S.D. Ind. May 9, 2011) (holding that clients waived the attorney-client privilege when they used their attorneys to commit discovery fraud; defendants, in sworn discovery responses filed via their attorneys, falsely stated that they did not retain certain relevant documents).

14

undermined its argument. 224 F.R.D. 246, 259 (D.D.C. 2004). This Court found that an entire subject matter waiver was necessary to protect the adversary system because it "ensur[ed] that the evidence in the record w[ould] not reflect only one side or [] part of a privileged communication." *Id.* at 259.

Likewise, here, a subject matter waiver is necessary to protect the adversary system. AAL USA relied on Holland & Knight's characterization of its legal representation in an affirmative motion to seek injunctive relief. In doing so, AAL USA deliberatively used testimony from its attorneys about their work to try to gain a tactical advantage in the litigation—one that Black Hall cannot rebut unless it is allowed to engage in discovery of Holland & Knight's legal representation. Moreover, disclosure of Holland & Knight's documents will not, in any way, reveal AAL's litigation strategies or trial preparations, as Holland & Knight does not represent AAL USA in the current action. Thus, the very dangers that the attorney work product privilege seeks to protect, are not present in this case. *See Hickman v. Taylor, 329 U.S. 495, 511 (1947)* (work product privilege protects an attorney's mental impressions, and if such materials were "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten [and] [a]n attorney's thoughts, heretofore inviolate, would not be his own.").[9]

## III. THE PARTIES APPEAR TO HAVE NARROWED THE ISSUES IN DISPUTE.

During meet and confer discussions, the parties appear to have been able to narrow the issues in dispute, as not all of the requests will require a ruling on the existence of or waiver of a privilege. Holland & Knight has informed Black Hall that it does not have any documents responsive to Request 7. Holland & Knight has informed Black Hall that it does have

---

[9] There should be no disagreement that Requests 7-10 of the subpoena seek non-privileged documents. In meet-and-confer discussions, Holland & Knight has indicated a willingness to produce

15

communications with the United States government that would be responsive to Request 9 and that it would produce those to Black Hall, subject to redactions for any privileged discussions between Holland & Knight and AAL USA in the same email chains. Holland & Knight also has invoices that are responsive to Request 13 and is willing to produce those with redactions. Black Hall is willing to accept redactions of any attorney-client privileged or attorney work product portions of invoices that are responsive to Request 13.

Accordingly, Black Hall is seeking an order requiring production of documents in response to Requests 1-6 and 11-12. Black Hall, however, is not seeking an order compelling production of documents in response to Requests 7-10 and 13 as long as Holland & Knight produces to Black Hall in a timely fashion any existing documents responsive to these requests and provides a log of any documents withheld from production of those requests.

## IV.    CONCLUSION

For these reasons, Black Hall requests that this Court compel Holland & Knight to comply with the subpoena forthwith.

Dated:  January 18, 2018                              Respectfully submitted,

/s/

Todd A. Bromberg (D.C. Bar # 472554)
Mark B. Sweet (D.C. Bar # 490987)
Stephen J. Obermeier (D.C. Bar # 978122)
**WILEY REIN LLP**
1776 K Street, NW
Washington, DC  20006
Phone:  (202) 719-7000
Facsimile:  (202) 719-7049

OF COUNSEL:

Roderic G. Steakley
Benjamin R. Little
**SIROTE & PERMUTT, P.C.**
305 Church Street, Suite 800
Huntsville, Alabama 35801
Telephone:     (256) 536-1711
Facsimile:     (256) 518-3681
Email: rsteakley@sirote.com
          blittle@sirote.com

Thomas A. Woodall
J. Rushton McClees
Joshua L. Hornady
**SIROTE & PERMUTT, P.C.**
2311 Highland Ave. S., Suite 500
Birmingham, AL 35205
Telephone:     (205) 930-5100
Facsimile:     (205) 930-5101
Email: twoodall@sirote.com
rmcclees@sirote.com
jhornady@sirote.com

James H. Richardson
**RICHARDSON MAPLES, P.C.**
301 East Holmes Avenue, Suite 100
P.O. Box 18667 [35804-8667]
Huntsville, Alabama 35801
Telephone: (256) 533-2440
Facsimile: (256) 533-2441
Email: jim@richardsonmaples.com

*Counsel for Black Hall, LLC and Black Hall Aerospace, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify on January 18, 2018, I served a copy of the foregoing by email and overnight mail on the following:

Victor Hayslip (*vhayslip@burr.com*)
Kip N. Nesmith (*nesmith@burr.com*)
Benjamin B. Coulter (*bcoulter@burr.com*)
Fob James, IV (*fjames@burr.com*)
BURR & FORMAN LLP
420 North 20th Street
3400 Wells Fargo Tower
Birmingham, Alabama 35203

Richard A. Freese
Freese & Goss, PLLC
1901 6th Avenue No, Suite 3120
Birmingham, AL 35203
rich@feeseandgoss.com

*Counsel for AAL USA, Inc., AAL Group, Ltd., Saul Kirsch and Oleg Sirbu*

Philip T. Evans
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, DC 20006
philip.evans@hklaw.com

*Counsel for Holland & Knight LLP*

Michael J Douglas
LEAK & DOUGLAS PC
The John A. Hand Building
17 20th Street North, Suite 200
Birmingham, AL 35203
mdouglas@leakdouglas.com

Oliver Benton Curtis, III
BROAD AND CASSEL
2 South Biscayne Boulevard, Suite 2100
Miami, FL 33131
bcurtis@broadandcassel.com

*Counsel for Keith Woolford*

/s/ _____
Mark Sweet

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**BLACK HALL, LLC and
BLACK HALL AEROSPACE, INC.,**

**v.**

**HOLLAND & KNIGHT, LLP**

## <u>ORDER</u>

Upon consideration of Black Hall, LLC and Black Hall Aerospace, Inc.'s (collectively, "Black Hall's") Motion to Compel, and all briefing, exhibits, and arguments thereon,

**IT IS SO ORDERED**, this _____ day of _____, 2018, that Black Hall's Motion to Compel is **GRANTED**, and that Holland & Knight LLP shall produce all documents responsive to Black Hall's subpoena dated November 17, 2017.

_____
U.S. DISTRICT JUDGE

# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| AAL USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-02090-KOB |
| | ) | |
| BLACK HALL, LLC, | ) | This Document Relates to Both Cases |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| AAL GROUP, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-00399-KOB |
| | ) | |
| BLACK HALL AEROSPACE, | ) | |
| INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Alabama

| | | |
|---|---|---|
| AAL USA, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 2:16-cv-02090-KOB |
| Black Hall, LLC, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                       Holland & Knight, LLP

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A for list of requests.

| Place: Wiley Rein LLP<br>Attn: Todd Bromberg<br>1776 K Street NW, Washington, DC 20006 | Date and Time:<br><br>12/08/2017 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      11/17/2017

                    *CLERK OF COURT*

                                                              OR

_____              _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Black Hall, LLC
and Black Hall Aerospace, Inc _____ , who issues or requests this subpoena, are:

Benjamin R. Little, Sirote & Permutt, PC, 305 Church St., Ste 800, Huntsville, AL, blittle@sirote.com (256) 518-3666

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:16-cv-02090-KOB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

     ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

     ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

                                     _____
                                                *Server's signature*

                                     _____
                                            *Printed name and title*

                                     _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

1.     All documents or communications reflecting or relating to the Asset Purchase Agreement and related documents (including the Assignment and Assumption Agreement, the Bill of Sale, and the Unanimous Consent of all of the Shareholders and all of the Members of the Board of Directors of AAL USA, Inc.) that were executed between AAL USA, Inc. ("AAL USA") and Black Hall Aerospace, Inc. on or about September 29, 2016 (collectively the "APA").

2.     All documents or communications reflecting Holland & Knight's review of, consideration of, advice on, or discussion about the APA.

3.     All communications between Oleg Sirbu and any attorney or employee of Holland & Knight regarding or relating to the APA.

4.     All documents which reflect Holland & Knight's comments, notes, or advice regarding the APA.

5.     All documents related to any unsigned drafts of agreements to transfer assets between (1) AAL USA or Oleg Sirbu and (2) Black Hall Aerospace, Inc. or Paul Daigle, including but not limited to any assignment of stock, release from non-compete agreement, assignment and assumption of a lease, assignment of a "legacy" contract, or novation of a government contract.

6.     All documents or communications related to the affidavits of Ronald S. Perlman and Ronald Oleynik attached hereto as Exhibit B, including without limitation communications to or from any attorney or employee of Burr & Forman, LLP regarding AAL USA, AAL Group, Ltd. ("AAL Group"), Oleg Sirbu, the affidavits attached hereto, or any litigation to which Oleg Sirbu, AAL USA, or AAL Group are parties.

7.     All communications to or from AAL USA, AAL Group, Oleg Sirbu, or any representative of any one of them regarding actual or potential claims against Holland & Knight or any of its attorneys or employees.

## EXHIBIT A

8.      All non-privileged documents or communications to or from anyone regarding AAL USA's and/or Oleg Sirbu's ban from or denial of access to U.S. military bases.

9.      All documents or communications which Holland & Knight, Oleg Sirbu, or AAL USA submitted to or received from the United States of America, or any branch, department, agency, or other subdivision or representative thereof regarding AAL USA's and/or Oleg Sirbu's ban from or denial of access to U.S. military bases.

10.      All non-privileged documents or communications regarding any investigation of Oleg Fidelskiy, AAL Group, AAL USA, and/or Oleg Sirbu conducted or being conducted by the United States of America, or any branch, department, agency, or other subdivision or representative thereof.

11.      All engagement letters or communications signed or approved by AAL USA, AAL Group, or Oleg Sirbu reflecting the scope of any engagement of Holland & Knight from September 23, 2016 through October 31, 2016.

12.      All invoices of Holland & Knight reflecting work performed for AAL USA, Oleg Sirbu, or AAL Group regarding or relating to the APA.

13.      All invoices of Holland & Knight reflecting work performed for AAL USA, Oleg Sirbu, or AAL Group regarding or relating to AAL USA's and/or Oleg Sirbu's ban from or denial of access to U.S. military bases or any investigation of Oleg Fidelskiy, AAL Group, AAL USA, and/or Oleg Sirbu conducted or being conducted by the United States of America, or any branch, department, agency, or other subdivision thereof.

DOCUMENT 278



## AFFIDAVIT

Without waiving any other attorney-client privilege, Ronald S. Perlman and

Ronald Oleynik hereby affirm that Holland & Knight, LLP counseled AAL USA, Inc. (and Oleg

Sirbu as owner) solely and exclusively with regard to its ban from Kandahar and Bagram air

bases, in order to assist in identifying and resolving whatever issues had precipitated the ban.

_____
Ronald S. Perlman

_____
Ronald Oleynik

Subscribed and sworn to before me this _5th_ day of December, 2016 by Ronald S.
Perlman.

_____
Notary Public

**RUTH A. THOMAS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2021

Subscribed and sworn to before me this _5th_ day of December, 2016 by Ronald Oleynik.

_____
Notary Public

**RUTH A. THOMAS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2021

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:16-cv-02090-KOB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Holland & Knight LLP

on *(date)*  11/17/2017.

☑ I served the subpoena by delivering a copy to the named person as follows:  Paul Kiernan, Holland & Knight LLP, 800 17th St NW, Washington D.C. 20006                on *(date)*  11/17/2017 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                 for travel and $                 for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.

Date: 11/17/2017

*Server's signature*

Josephine Gibbens, Legal Assistant
*Printed name and title*

1827 Riggs Pl NW, Apt. 1, Washington DC 20009
*Server's address*

Additional information regarding attempted service, etc.:

# Exhibit 2

# FILED UNDER SEAL

# Exhibit 3

# FILED UNDER SEAL

# Exhibit 4

| From: | ron.oleynik@hklaw.com |
|---|---|
| Sent: | Thursday, September 29, 2016 6:10 PM |
| To: | JLevin@maynardcooper.com |
| Cc: | oleg.sirbu@aal-usa.com; paul.daigle@aal-usa.com; Ronald.Perlman@hklaw.com |
| Subject: | FW: Sale Documents |
| Attach: | AAL USA-Joint Unanimous Written Consent.pdf; AAL USA-Black Hall_Assignment and Assumption Agreement.pdf; AAL USA-Black Hall_Asset Purchase Agreement.pdf; AAL USA-Black Hall_Bill of Sale.pdf |

Jon:

Oleg asked me to forwarded these to you. The only change I'm aware of is the removal of 1.01(f).

Please let me know if you have any questions.

Regards,

Ron

**Ronald A. Oleynik | Holland & Knight**
Partner
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, DC 20006
Phone 202.457.7183 | Fax 202.955.5564
ron.oleynik@hklaw.com | www.hklaw.com

Add to address book | View professional biography

**From:** Oleg Sirbu [mailto:oleg.sirbu@aal-usa.com]
**Sent:** Thursday, September 29, 2016 6:22 PM
**To:** Oleynik, Ronald (WAS - X77183) <ron.oleynik@hklaw.com>
**Subject:** FW: Sale Documents

*Oleg Sirbu*
President



**Office:** +1 256.971.1967
**Mobile:** +1 919.999.0185
**Mobile OCONUS:** +971.50980.6748
**Email:** oleg.sirbu@aal-usa.com

The information and/or technical data contained or attached to this e-mail is confidential and/or proprietary. It may be subject to the International Traffic in Arms Regulations (ITAR) or the Export Administration Regulations (EAR) and may require an approved export license prior to its export. An export can include a release or disclosure to a foreign national inside or outside the United States whether verbal or physical. This message is intended for use only to the individuals to whom it is addressed. Include this notice with any reproduced portion of this information.

**From:** Jon Levin [mailto:JLevin@maynardcooper.com]
**Sent:** Thursday, September 29, 2016 4:40 PM

MCG 000501

CONFIDENTIAL

**To:** Oleg Sirbu; Paul Daigle
**Cc:** Andy Watson
**Subject:** Sale Documents

Oleg and Paul,

Please find attached for your signature the sale documents, which consist of the following:
- Asset Purchase Agreement
- Assignment and Assumption Agreement
- Unanimous Written Consent for the Sale
- Bill of Sale

I understand that these documents reflect the business terms to which the parties have agreed.  As the Government and Leidos have repeatedly moved the date for agreement up - - from Friday COB to Thursday COB to Thursday midday to this morning - - I strongly suggest that you either sign or raise any issues you have with these documents **as quickly as possible**.  Andy and Matthew have worked these documents quickly and efficiently to ensure that we meet the moving deadline target.

In addition, to ensure a smooth transition, I suggest some period of separation between the parties, e.g., two months, to ensure that the people and entities pulling the strings on this transaction understand that a clear line of fracture now exists.

Thank you,

Jon

**JON** LEVIN
Shareholder
T: **256.512.5713**
F: **256.512.5735**
jlevin@maynardcooper.com
655 Gallatin Street
Huntsville, Alabama 35801
www.maynardcooper.com



Confidentiality Notice - The information contained in this e-mail and any attachments to it may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

IRS Circular 230 Disclosure - To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Please consider the environment before printing this email.**

Confidentiality Notice - The information contained in this e-mail and any attachments to it is intended only for the named recipient and may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately

MCG 000502

of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

MCG 000503

CONFIDENTIAL

**JOINT UNANIMOUS WRITTEN CONSENT OF
ALL OF THE STOCKHOLDERS AND ALL OF THE MEMBERS OF THE
BOARD OF DIRECTORS OF
AAL USA INC.**

The undersigned, constituting the all the stockholders (the "Stockholders") and all of the members of the Board of Directors (the "Board") of **AAL USA INC.**, a Delaware corporation (the "Corporation"), acting pursuant to the authority of Delaware General Corporation Law Section 228 and Section 141, hereby adopt the following resolutions:

**WHEREAS**, the Stockholders and the Board have analyzed and considered certain business conditions encountered by the Corporation; and

**WHEREAS**, the Stockholders and the Board deem it desirable and in the best interest of the Corporation to enter into a transaction pursuant to which the Corporation shall sell substantially all of its assets to Black Hall Aerospace, Inc., an Alabama corporation (the "Buyer") and undertake certain other obligations in connection with such sale (collectively, the "Transaction"); and

**WHEREAS**, in connection with the Transaction, the Stockholders and the Board deem it desirable and in the best interest of the Corporation to enter into that certain Asset Purchase Agreement, in substantially the form attached hereto as **Exhibit A**, by and between the Corporation and the Buyer (the "Purchase Agreement"), as well as all ancillary agreements to the Purchase Agreement (the "Ancillary Agreements"); and

**WHEREAS**, the Stockholders and the Board have considered the purchase price set forth in the Purchase Agreement (the "Purchase Price"), and believe the Purchase Price constitutes fair consideration for all of the Corporation's assets, after considering the fact that the Corporation has lost most, and expects to lose the rest, of its contracts, which are its only sources of revenue;

**NOW, THEREFORE, BE IT RESOLVED**, that the Stockholders and the Board do hereby approve, ratify, and confirm the Transaction in all respects; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby approve of the form of the Purchase Agreement and the Ancillary Agreements in all respects; and

**BE IT FURTHER RESOLVED,** that the Stockholders and the Board do hereby authorize and direct Mr. Oleg Sirbu, as Chairman of the Board of the Corporation, to execute and deliver the Purchase Agreement, the Ancillary Agreements, and all

{H0301409.1}

MCG 000504

CONFIDENTIAL

other documents useful or necessary, as determined by Mr. Sirbu, in his discretion, to consummate the Transaction; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby authorize and direct Mr. Sirbu and the other officers of the Corporation to take any other actions as they, in their sole discretion, deem necessary to complete the Transaction; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby waive any required notice of a meeting necessary to give effect to the resolutions set forth above.

This Written Consent is to be placed with the minutes and proceedings of the Corporation, and the action taken herein is as fully effective as if enacted at a meeting duly called and held. This Written Consent may be executed in any number of counterparts, all of which together shall constitute one Written Consent. It shall not be necessary that any counterpart be signed by all parties, so long as each counterpart shall be signed by one of the parties. Transmission of an executed copy via E-mail (PDF) or facsimile shall constitute due and sufficient delivery of this Written Consent, and shall have the same effect as a manually executed original.

Dated effective as of the 29th day of September, 2016.

Oleg Sirbu
as Shareholder and Member of the Board of
Directors of the Corporation

Paul Daigle
as Shareholder and Member of the Board of
Directors of the Corporation

(CONSTITUTING ALL OF THE CORPORATION'S STOCKHOLDERS AND ALL OF THE MEMBERS OF THE CORPORATION'S BOARD OF DIRECTORS)

{H0301409.1}                                    2

MCG 000505

CONFIDENTIAL

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

(See attached.)

{H0301409.1}

MCG 000506

CONFIDENTIAL

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "**Agreement**"), effective as of September 29, 2016 (the "**Effective Date**"), is by and between AAL USA Inc., a Delaware corporation ("**Seller**"), and Black Hall Aerospace, Inc., an Alabama corporation ("**Buyer**").

WHEREAS, Seller and Buyer have entered into a certain Asset Purchase Agreement, dated as of September 29, 2016 (the "**Purchase Agreement**"), pursuant to which, among other things, Seller has agreed to assign all of its rights, title and interests in, and Buyer has agreed to assume all of Seller's duties and obligations under, all of the Seller's contracts (the "**Assigned Contracts**").

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Definitions</u>. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2.    <u>Assignment and Assumption</u>. Seller hereby sells, assigns, grants, conveys and transfers to Buyer all of Seller's right, title and interest in and to the Assigned Contracts. Buyer hereby accepts such assignment and assumes all of Seller's duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of Seller under the Assigned Contracts accruing on and after the Effective Date.

3.    <u>Terms of the Purchase Agreement</u>. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, and agreements relating to the Assigned Contracts are incorporated herein by this reference. The parties hereto acknowledge and agree that the representations, warranties, covenants, and agreements contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction).

5.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature page follows]*

{H0301215.1}

MCG 000507

CONFIDENTIAL

*[Signature Page to Assignment and Assumption Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

BUYER:

Black Hall Aerospace, Inc.

By: _____
Name: Paul Daigle
Its:    President

SELLER:

AAL USA Inc.

By: _____
Name: Oleg Sirbu
Its:    Chairman of the Board

MCG 000508

CONFIDENTIAL

# ASSET PURCHASE AGREEMENT

between

# AAL USA INC.

and

# BLACK HALL AEROSPACE, INC.

dated as of

September 29, 2016

{H0301412.2}

MCG 000509

CONFIDENTIAL

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of September 29, 2016, is entered into between AAL USA Inc., a Delaware corporation ("**Seller**") and Black Hall Aerospace, Inc., an Alabama corporation ("**Buyer**").

## RECITALS

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, the rights and obligations of Seller to the Purchased Assets and the Assumed Liabilities (as defined herein), subject to the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
### PURCHASE AND SALE

**Section 1.01**    **Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("**Encumbrance**"), all of Seller's right, title and interest in all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets) (collectively, the "**Purchased Assets**"), including, without limitation, the following:

(a)    all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories;

(b)    all contracts of any kind whatsoever;

(c)    all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property;

(d)    all real property leased by Seller and used in or necessary for the conduct of its business as currently conducted (together with all rights, title and interest of Seller in and to leasehold improvements relating thereto, including, but not limited to, security deposits, reserves or prepaid rents paid in connection therewith, (collectively, the "**Leased Real Property**");

(e)    all permits, which are held by Seller and required for the conduct of its business as currently conducted or for the ownership and use of the Purchased Assets; and

**Section 1.02**    **Excluded Assets.** None

**Section 1.03**    **Assumption of Liabilities.** Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge the liabilities and obligations arising after the Closing (as defined herein) under the Purchased Assets, but only to

MCG 000510

CONFIDENTIAL

the extent that such liabilities and obligations do not related to any breach, default or violation by Seller on or prior to the Closing (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created.

**Section 1.04** **Purchase Price.** The aggregate purchase price for the Purchased Assets shall be $501,660.46.

(a)     Upon execution of this Agreement, Buyer shall pay Seller $100,000 of this Price.

(b)     Buyer shall make payment to the Seller of $200,000.00 of this price upon receipt by the Buyer Invoice with the due date of October 30, 2016 and the remaining $201,660.46 with due date of November 30, 2016.

**Section 1.05** **Closing.** The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place simultaneously with the execution of this Agreement on the date of this Agreement (the "**Closing Date**") at the offices of Maynard, Cooper & Gale, P.C., 655 Gallatin Street SW, Huntsville, Alabama 35801. The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

**Section 1.06** **Closing Deliverables.**

(a)     At the Closing, Seller shall deliver to Buyer the following:

(i)     This document executed.

(ii)     an assignment and assumption agreement in the form of **Exhibit C** hereto (the "**Assignment and Assumption Agreement**") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

(iii)     an Assignment and Assumption of Lease in form and substance satisfactory to Buyer (the "**Assignment and Assumption of Lease**") and duly executed by Seller;

(b)     At the Closing, Buyer shall deliver to Seller the following:

(i)     the Payment as defined in Section 1.04;

(ii)     the Assignment and Assumption Agreement duly executed by Buyer;

(iii)     the Assignment and Assumption of Lease duly executed by Buyer; and

MCG 000511

CONFIDENTIAL

## ARTICLE II
### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this **Article II** are true and correct as of the date hereof.

**Section 2.01**         **Organization and Authority of Seller; Enforceability.** Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware. Seller has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

**Section 2.02**         **No Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or the Purchased Assets; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance on the Purchased Assets. No consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

**Section 2.03**         **Title to Purchased Assets.** Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this **Article III** are true and correct as of the date hereof.

**Section 3.01**         **Organization and Authority of Buyer; Enforceability.** Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state of Alabama. Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Buyer of this

{H0301412.2}                                          4

MCG 000512

CONFIDENTIAL

Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

**Section 3.02**    **No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

## ARTICLE IV
### COVENANTS

**Section 4.01**    **Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**Section 4.02**    **Transfer Taxes.** All transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid equally by Buyer and Seller when due. Seller shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees, and Buyer shall cooperate with respect thereto as necessary and reimburse Seller for one half of such taxes or fees.

**Section 4.03**    **Further Assurances.** Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder.

## ARTICLE V
### MISCELLANEOUS

**Section 5.01**    **Expenses.** All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 5.02**    **Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the

{H0301412.2}                                   5

MCG 000513

CONFIDENTIAL

addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third business day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 5.02**):

| If to Seller: | Attn: Oleg Sirbu |
|---|---|
| | _____ |
| | _____ |
| | e-mail: _____ |
| If to Buyer: | Attn: Paul Daigle |
| | _____ |
| | _____ |
| | e-mail: _____ |

**Section 5.03      Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 5.04      Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 5.05      Entire Agreement.** This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 5.06      Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 5.07      No Third-party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal

MCG 000514

CONFIDENTIAL

or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 5.08**     **Amendment and Modification.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

**Section 5.09**     **Waiver.** No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 5.10**     **Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction).

**Section 5.11**     **Submission to Jurisdiction.** Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Alabama in each case located in the city of Huntsville and county of Madison, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

**Section 5.12**     **Waiver of Jury Trial.** Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

**Section 5.13**     **Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 5.14**     **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.



MCG 000515

CONFIDENTIAL

*[Signature Page to Asset Purchase Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

BUYER:

Black Hall Aerospace, Inc.

By: _____
Name: Paul Daigle
Its:    President

SELLER:

AAL USA Inc.

By: _____
Name: Oleg Sirbu
Its:    Chairman of the Board

MCG 000516

## BILL OF SALE

This Bill of Sale (the "Bill of Sale"), dated as of the 29th day of September, 2016, is executed and delivered by **AAL USA INC.**, a Delaware corporation (the "Seller") to **BLACK HALL AEROSPACE, INC.**, an Alabama corporation (the "Buyer"). All capitalized terms used and not defined herein shall have the respective meanings ascribed to such terms in that certain Asset Purchase Agreement, dated as of September 29, 2016, by and between the Seller and the Buyer (the "Purchase Agreement").

## AGREEMENT

**NOW, THEREFORE**, in consideration of the execution and delivery of the Purchase Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller does hereby unconditionally, absolutely, and irrevocably grant, bargain, sell, transfer, assign, convey, set over and deliver unto Buyer all of the Seller's right, title and interest in and to the Purchased Assets (as such term is defined in the Purchase Agreement) free and clear of all liens, charges and encumbrances other than those identified in the Purchase Agreement. The Purchased Assets transferred by this Bill of Sale are transferred pursuant to, this Bill of Sale is governed by, and the rights and obligations of Buyer and the Seller are subject to, the terms and conditions of the Purchase Agreement. To the extent that any term or provision of this Bill of Sale is or is deemed to be inconsistent with the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control.

**IN WITNESS WHEREOF**, this Bill of Sale has been executed as of the date and year first written above.


SELLER:

AAL USA Inc.


By: _____
Name: Oleg Sirbu
Its: Chairman of the Board


{H0301395.1}

MCG 000517

CONFIDENTIAL

# Exhibit 5

| From: | Paul Daigle <paul.daigle@aal-usa.com> |
|---|---|
| Sent: | Thursday, September 29, 2016 5:42 PM |
| To: | Oleg Sirbu <oleg.sirbu@aal-usa.com>; Jon Levin <JLevin@maynardcooper.com> |
| Cc: | Andy Watson <awatson@maynardcooper.com> |
| Subject: | RE: Sale Documents |
| Attach: | AAL USA-Black Hall_Asset Purchase Agreement.pdf; AAL USA-Black Hall_Assignment and Assumption Agreement.pdf; AAL USA-Joint Unanimous Written Consent.pdf |

Gents,

Executed documents attached.

Best,

Paul

*Paul J Daigle*
Chief Executive Officer
CPT, US Army (Ret)



**Office:** +1 256.971.1967 Ext. 2482
**Fax:** +1 256.971.1969
**Mobile:** +1 919.259.9903
**Email:** paul.daigle@aal-usa.com

The information and/or technical data contained or attached to this e-mail is confidential and/or proprietary. It may be subject to the International Traffic in Arms Regulations (ITAR) or the Export Administration Regulations (EAR) and may require an approved export license prior to its export. An export can include a release or disclosure to a foreign national inside or outside the United States whether verbal or physical. This message is intended for use only to the individuals to whom it is addressed. Include this notice with any reproduced portion of this information.

**From:** Oleg Sirbu
**Sent:** Thursday, September 29, 2016 5:21 PM
**To:** Jon Levin <JLevin@maynardcooper.com>; Paul Daigle <paul.daigle@aal-usa.com>
**Cc:** Andy Watson <awatson@maynardcooper.com>
**Subject:** RE: Sale Documents

*Oleg Sirbu*
President



**Office:** +1 256.971.1967
**Mobile:** +1 919.999.0185
**Mobile OCONUS:** +971.50980.6748

MCG 000485

CONFIDENTIAL

**Email:** oleg.sirbu@aal-usa.com

The information and/or technical data contained or attached to this e-mail is confidential and/or proprietary. It may be subject to the International Traffic in Arms Regulations (ITAR) or the Export Administration Regulations (EAR) and may require an approved export license prior to its export. An export can include a release or disclosure to a foreign national inside or outside the United States whether verbal or physical. This message is intended for use only to the individuals to whom it is addressed. Include this notice with any reproduced portion of this information.

**From:** Jon Levin [mailto:JLevin@maynardcooper.com]
**Sent:** Thursday, September 29, 2016 4:40 PM
**To:** Oleg Sirbu; Paul Daigle
**Cc:** Andy Watson
**Subject:** Sale Documents

Oleg and Paul,

Please find attached for your signature the sale documents, which consist of the following:
- Asset Purchase Agreement
- Assignment and Assumption Agreement
- Unanimous Written Consent for the Sale
- Bill of Sale

I understand that these documents reflect the business terms to which the parties have agreed. As the Government and Leidos have repeatedly moved the date for agreement up - - from Friday COB to Thursday COB to Thursday midday to this morning - - I strongly suggest that you either sign or raise any issues you have with these documents **as quickly as possible**. Andy and Matthew have worked these documents quickly and efficiently to ensure that we meet the moving deadline target.

In addition, to ensure a smooth transition, I suggest some period of separation between the parties, e.g., two months, to ensure that the people and entities pulling the strings on this transaction understand that a clear line of fracture now exists.

Thank you,

Jon

**JON** LEVIN
Shareholder
T: **256.512.5713**
F: **256.512.5735**
jlevin@maynardcooper.com
655 Gallatin Street
Huntsville, Alabama 35801
www.maynardcooper.com



Confidentiality Notice - The information contained in this e-mail and any attachments to it may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

IRS Circular 230 Disclosure - To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

MCG 000486

CONFIDENTIAL

**Please consider the environment before printing this email.**

Confidentiality Notice - The information contained in this e-mail and any attachments to it is intended only for the named recipient and may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

MCG 000487

CONFIDENTIAL

**ASSET PURCHASE AGREEMENT**

between

**AAL USA INC.**

and

**BLACK HALL AEROSPACE, INC.**

dated as of

September 29, 2016

{H0301412.2}

MCG 000488

CONFIDENTIAL

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this **"Agreement"**), dated as of September 29, 2016, is entered into between AAL USA Inc., a Delaware corporation (**"Seller"**) and Black Hall Aerospace, Inc., an Alabama corporation (**"Buyer"**).

## RECITALS

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, the rights and obligations of Seller to the Purchased Assets and the Assumed Liabilities (as defined herein), subject to the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
### PURCHASE AND SALE

**Section 1.01** **Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance (**"Encumbrance"**), all of Seller's right, title and interest in all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets) (collectively, the **"Purchased Assets"**), including, without limitation, the following:

(a) all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories;

(b) all contracts of any kind whatsoever;

(c) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property;

(d) all real property leased by Seller and used in or necessary for the conduct of its business as currently conducted (together with all rights, title and interest of Seller in and to leasehold improvements relating thereto, including, but not limited to, security deposits, reserves or prepaid rents paid in connection therewith, (collectively, the **"Leased Real Property"**);

(e) all permits, which are held by Seller and required for the conduct of its business as currently conducted or for the ownership and use of the Purchased Assets; and

**Section 1.02** **Excluded Assets.** None

**Section 1.03** **Assumption of Liabilities.** Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge the liabilities and obligations arising after the Closing (as defined herein) under the Purchased Assets, but only to

{H0301412.2}                                   2

MCG 000489

CONFIDENTIAL

the extent that such liabilities and obligations do not related to any breach, default or violation by Seller on or prior to the Closing (collectively, the **"Assumed Liabilities"**). Other than the Assumed Liabilities, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created.

**Section 1.04** **Purchase Price.** The aggregate purchase price for the Purchased Assets shall be $501,660.46.

(a) Upon execution of this Agreement, Buyer shall pay Seller $100,000 of this Price.

(b) Buyer shall make payment to the Seller of $200,000.00 of this price upon receipt by the Buyer Invoice with the due date of October 30, 2016 and the remaining $201,660.46 with due date of November 30, 2016.

**Section 1.05** **Closing.** The closing of the transactions contemplated by this Agreement (the **"Closing"**) shall take place simultaneously with the execution of this Agreement on the date of this Agreement (the **"Closing Date"**) at the offices of Maynard, Cooper & Gale, P.C., 655 Gallatin Street SW, Huntsville, Alabama 35801. The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

**Section 1.06** **Closing Deliverables.**

(a) At the Closing, Seller shall deliver to Buyer the following:

(i) This document executed.

(ii) an assignment and assumption agreement in the form of **Exhibit C** hereto (the **"Assignment and Assumption Agreement"**) and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

(iii) an Assignment and Assumption of Lease in form and substance satisfactory to Buyer (the **"Assignment and Assumption of Lease"**) and duly executed by Seller;

(b) At the Closing, Buyer shall deliver to Seller the following:

(i) the Payment as defined in Section 1.04;

(ii) the Assignment and Assumption Agreement duly executed by Buyer;

(iii) the Assignment and Assumption of Lease duly executed by Buyer; and

{H03014122}

3

MCG 000490

## ARTICLE II
### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this **Article II** are true and correct as of the date hereof.

**Section 2.01** **Organization and Authority of Seller; Enforceability.** Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware. Seller has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

**Section 2.02** **No Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or the Purchased Assets; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance on the Purchased Assets. No consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

**Section 2.03** **Title to Purchased Assets.** Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this **Article III** are true and correct as of the date hereof.

**Section 3.01** **Organization and Authority of Buyer; Enforceability.** Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state of Alabama. Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Buyer of this

MCG 000491

CONFIDENTIAL

Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

**Section 3.02** **No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

## ARTICLE IV
### COVENANTS

**Section 4.01** **Bulk Sales Laws.** The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

**Section 4.02** **Transfer Taxes.** All transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid equally by Buyer and Seller when due. Seller shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees, and Buyer shall cooperate with respect thereto as necessary and reimburse Seller for one half of such taxes or fees.

**Section 4.03** **Further Assurances.** Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder.

## ARTICLE V
### MISCELLANEOUS

**Section 5.01** **Expenses.** All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 5.02** **Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the

MCG 000492

CONFIDENTIAL

addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third business day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 5.02**):

| | | |
|---|---|---|
| If to Seller: | Attn: | Oleg Sirbu |
| | | _____ |
| | | _____ |
| | e-mail: | _____ |
| If to Buyer: | Attn: | Paul Daigle |
| | | _____ |
| | | _____ |
| | e-mail: | _____ |

**Section 5.03**     **Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 5.04**     **Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 5.05**     **Entire Agreement.** This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 5.06**     **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 5.07**     **No Third-party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal

MCG 000493

CONFIDENTIAL

or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 5.08     Amendment and Modification.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

**Section 5.09     Waiver.** No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 5.10     Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction).

**Section 5.11     Submission to Jurisdiction.** Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Alabama in each case located in the city of Huntsville and county of Madison, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

**Section 5.12     Waiver of Jury Trial.** Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

**Section 5.13     Specific Performance.** The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 5.14     Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.



MCG 000494

CONFIDENTIAL

*[Signature Page to Asset Purchase Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

BUYER:

Black Hall Aerospace, Inc.

By: _____

Name: Paul Daigle

Its:   President

SELLER:

AAL USA Inc.

By: _____

Name: Oleg Sirbu

Its:   Chairman of the Board

{H0301412.2}                    8

MCG 000495

CONFIDENTIAL

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (the "**Agreement**"), effective as of September 29, 2016 (the "**Effective Date**"), is by and between AAL USA Inc., a Delaware corporation ("**Seller**"), and Black Hall Aerospace, Inc., an Alabama corporation ("**Buyer**").

WHEREAS, Seller and Buyer have entered into a certain Asset Purchase Agreement, dated as of September 29, 2016 (the "**Purchase Agreement**"), pursuant to which, among other things, Seller has agreed to assign all of its rights, title and interests in, and Buyer has agreed to assume all of Seller's duties and obligations under, all of the Seller's contracts (the "**Assigned Contracts**").

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     Definitions. All capitalized terms used in this Agreement but not otherwise defined herein are given the meanings set forth in the Purchase Agreement.

2.     Assignment and Assumption. Seller hereby sells, assigns, grants, conveys and transfers to Buyer all of Seller's right, title and interest in and to the Assigned Contracts. Buyer hereby accepts such assignment and assumes all of Seller's duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of Seller under the Assigned Contracts accruing on and after the Effective Date.

3.     Terms of the Purchase Agreement. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, and agreements relating to the Assigned Contracts are incorporated herein by this reference. The parties hereto acknowledge and agree that the representations, warranties, covenants, and agreements contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

4.     Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Alabama without giving effect to any choice or conflict of law provision or rule (whether of the State of Alabama or any other jurisdiction).

5.     Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signature page follows]*

{H0301215.1}

MCG 000496

CONFIDENTIAL

*[Signature Page to Assignment and Assumption Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

BUYER:

Black Hall Aerospace, Inc.

By: _____
Name: Paul Daigle
Its:     President

SELLER:

AAL USA Inc.

By: _____
Name: Oleg Sirbu
Its:     Chairman of the Board

{H0301215.1}

2

MCG 000497

CONFIDENTIAL

## JOINT UNANIMOUS WRITTEN CONSENT OF
## ALL OF THE STOCKHOLDERS AND ALL OF THE MEMBERS OF THE
## BOARD OF DIRECTORS OF
## AAL USA INC.

The undersigned, constituting the all the stockholders (the "<u>Stockholders</u>") and all of the

members of the Board of Directors (the "<u>Board</u>") of **AAL USA INC.**, a Delaware corporation

(the "<u>Corporation</u>"), acting pursuant to the authority of Delaware General Corporation Law

Section 228 and Section 141, hereby adopt the following resolutions:

**WHEREAS,** the Stockholders and the Board have analyzed and considered certain business conditions encountered by the Corporation; and

**WHEREAS,** the Stockholders and the Board deem it desirable and in the best interest of the Corporation to enter into a transaction pursuant to which the Corporation shall sell substantially all of its assets to Black Hall Aerospace, Inc., an Alabama corporation (the "<u>Buyer</u>") and undertake certain other obligations in connection with such sale (collectively, the "<u>Transaction</u>"); and

**WHEREAS,** in connection with the Transaction, the Stockholders and the Board deem it desirable and in the best interest of the Corporation to enter into that certain Asset Purchase Agreement, in substantially the form attached hereto as **Exhibit A**, by and between the Corporation and the Buyer (the "<u>Purchase Agreement</u>"), as well as all ancillary agreements to the Purchase Agreement (the "<u>Ancillary Agreements</u>"); and

**WHEREAS,** the Stockholders and the Board have considered the purchase price set forth in the Purchase Agreement (the "<u>Purchase Price</u>"), and believe the Purchase Price constitutes fair consideration for all of the Corporation's assets, after considering the fact that the Corporation has lost most, and expects to lose the rest, of its contracts, which are its only sources of revenue;

**NOW, THEREFORE, BE IT RESOLVED,** that the Stockholders and the Board do hereby approve, ratify, and confirm the Transaction in all respects; and

**BE IT FURTHER RESOLVED,** that the Stockholders and the Board do hereby approve of the form of the Purchase Agreement and the Ancillary Agreements in all respects; and

**BE IT FURTHER RESOLVED,** that the Stockholders and the Board do hereby authorize and direct Mr. Oleg Sirbu, as Chairman of the Board of the Corporation, to execute and deliver the Purchase Agreement, the Ancillary Agreements, and all

{H0301409.1}

MCG 000498

CONFIDENTIAL

other documents useful or necessary, as determined by Mr. Sirbu, in his discretion, to consummate the Transaction; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby authorize and direct Mr. Sirbu and the other officers of the Corporation to take any other actions as they, in their sole discretion, deem necessary to complete the Transaction; and

**BE IT FURTHER RESOLVED**, that the Stockholders and the Board do hereby waive any required notice of a meeting necessary to give effect to the resolutions set forth above.

This Written Consent is to be placed with the minutes and proceedings of the Corporation, and the action taken herein is as fully effective as if enacted at a meeting duly called and held. This Written Consent may be executed in any number of counterparts, all of which together shall constitute one Written Consent. It shall not be necessary that any counterpart be signed by all parties, so long as each counterpart shall be signed by one of the parties. Transmission of an executed copy via E-mail (PDF) or facsimile shall constitute due and sufficient delivery of this Written Consent, and shall have the same effect as a manually executed original.

Dated effective as of the 29th day of September, 2016.

Oleg Sirbu
as Shareholder and Member of the Board of
Directors of the Corporation

Paul Daigle
as Shareholder and Member of the Board of
Directors of the Corporation

(CONSTITUTING ALL OF THE
CORPORATION'S STOCKHOLDERS AND
ALL OF THE MEMBERS OF THE
CORPORATION'S BOARD OF DIRECTORS)

MCG 000499

CONFIDENTIAL

## EXHIBIT A

**ASSET PURCHASE AGREEMENT**

(See attached.)

{H0301409.1}

MCG 000500

CONFIDENTIAL

# Exhibit 6

DOCUMENT 277

Case 1:16-cv-02096-CB-ND Documenta-285-3 Filed 01/22/30/18 Page 96 of 136 Page 53 AM
47-CV-2016-901750.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

ELECTRONICALLY FILED

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | | |
|---|---|---|
| **BLACK HALL AEROSPACE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 47-CV-2016-901750.00** |
| | ) | |
| **AAL USA, INC., OLEG SIRBU, AND SAUL** | ) | |
| **KIRSCH,** | ) | |
| | ) | |
| **Defendants.** | | |

### DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUIRING RESPONDENT TO STOP SALE, AND SAUL KIRSCH'S MOTION TO INSPECT BLACK HALL AEROSPACE INC.'S CORPORATE RECORDS

AAL USA, Inc. ("AAL") and Saul Kirsch ("Kirsch") (collectively, "Defendants") move the Court to enter a temporary restraining order ("TRO") and, upon expiration of the TRO, preliminary injunction prohibiting Black Hall Aerospace, Inc. ("BHA" or "Respondent") and anyone acting in concert with it from selling or otherwise transferring the company (or any substantial portion of its assets) while this litigation is pending.

Kirsch further moves the Court to enter an order (1) requiring BHA to allow Kirsch (a BHA shareholder) to make a full inspection of BHA's corporate records, (2) awarding Kirsch his attorneys' fees, pursuant to Alabama statute and equitable exceptions, incurred in bringing this motion, and (3) awarding Kirsch penalties pursuant to ALA. CODE § 10A-2-16.02(a).

In support of their motion, Defendants rely on the Affidavit of Saul Kirsch (Ex. 1), the Affidavit of John Daniels (Ex. 2), the Cessna Closing Statement (Ex. 3), the December 23, 2016 order of Judge Bentley H. Patrick (Ex. 4), the Assignment of Aircraft Purchase and Sale Agreement (Ex. 5), the Affidavit of Oleg Sirbu (Ex. 6), the Second Affidavit of John Daniels (Ex. 7), the Subscription Agreement (Ex. 8), the Demand Letter of Saul Kirsch (Ex. 9), the

Response Letter of Jim Richardson (Ex. 10), the Affidavit of Keith Woolford (Ex. 11), the

Affidavit of Alyssa Connell (Ex. 12), the Affidavit of Holland & Knight (Ex. 13), the Affidavit

of Kip Nesmith (Ex. 14), the Affidavit of Hall Albright Garrison & Associates (Ex. 15), and their

Answer and Counterclaim, as well as the exhibits thereto. Defendants state the following in

support of their motion:

## I. INTRODUCTION

This is a very straightforward issue, but it is incredibly time-sensitive. After absconding

several million dollars of AAL's assets, BHA's CEO Paul Daigle ("Daigle," also the former CEO

of AAL) and CFO Keith Woolford ("Woolford," also the former CFO of AAL) and other BHA

officers are now engaged in a scheme to transfer BHA's assets and/or ownership to other

companies. AAL, as a part of the investigation in which it learned of Daigle's and Woolford's

fraudulent self-dealing, misappropriation of their prior employer's money (while employees of

AAL) to buy houses and an airplane, and granting to themselves hundreds of thousands of

dollars in unauthorized bonuses, has learned that BHA's officers are trying to sell BHA's assets

to a "friendly" buyer or third party. Unless they are immediately stopped from selling the

company and/or its assets (the ownership of which is contested), AAL will lose and/or have

severely complicated any chance it has left to recover on its counterclaim. BHA and its co-

conspirators apparently now understand that their efforts to defraud AAL and its owner Oleg

Sirbu ("Sirbu") are being exposed.

BHA's plan to transfer away the assets at the heart of this lawsuit has only just come to

light. AAL has learned of a two-part plan: (1) BHA's officers are attempting to sell BHA and/or

its assets; (2) BHA's officers are attempting to hide and/or dissipate BHA's assets and to transfer

the assets to its individual officers. In either case, AAL will be left without an adequate remedy

at law. The dispossession of BHA or its assets would deprive AAL of its remedy of recovering

the assets stolen by BHA needed for AAL to salvage relationships and business and continue as a going concern. Even if the company is not sold, BHA is attempting to destroy evidence of fraud and to hide away assets to prevent the recovery of assets in this litigation. Regardless, AAL would be left without an adequate remedy against BHA and its co-conspirators.

Kirsch is a 12.5% owner of BHA. Consequently, he has a right to inspect the books and records of BHA. Kirsch understands that a sale of BHA is imminent, and if his motion is not granted, then Kirsch will have no way to exercise his rights as a BHA shareholder and take any action that may be necessary related to the potential sale.

Kirsch recently demanded to inspect BHA's corporate records because, among other reasons, he was concerned that BHA officers' mismanagement of BHA (which has included having BHA sue him based on a false affidavit) was grossly devaluing his shares. Not surprisingly, in an apparent attempt to delay discovery of their fraud so that by the time the records are produced, it will be too late, the officers of BHA refused to furnish meaningful corporate records to Kirsch. They apparently hope that before he sees the records they will have (1) sold the company and/or substantially all its assets; and/or (2) siphoned off or transferred all of BHA's assets through their nefarious activities.

BHA's reason for denying full access to the corporate records is disingenuous—it claims that Kirsch is trying to hurt BHA because BHA is suing Kirsch. But the truth is that it is BHA, not Kirsch, that is attempting to use this lawsuit as leverage. Until this Motion, Kirsch has not made any claim in this lawsuit against BHA or its officers and directors—just the opposite, BHA has sued him. BHA's officers are trying desperately to hide their activities, including by hiding or destroying or otherwise failing to preserve documents, so that they can try to orchestrate one last fraud—selling BHA and running off with the money.

## II. BACKGROUND

**A.**     **BHA and its officers are attempting to transfer BHA and/or its assets.**

1.     Kirsch is a 12.5% owner of BHA. Ex. 1. He is also, however, a defendant in this lawsuit and BHA's officers are attempting to prevent him from accessing complete and meaningful information about the company.

2.     Despite this, Kirsch has learned that BHA is or has been attempting to sell the company. Ex. 1. John Daniels, who was BHA's IT manager, has likewise become aware that BHA has been and/or is attempting to sell the company for $20 million. *See* Ex. 2. None of BHA's officers, owners, or directors have communicated with AAL or Kirsch in any way about the potential sale.

3.     This is not the first time Daigle and Woolford (the CEO and CFO of BHA and former CEO and CFO of AAL) have transferred assets and concealed their transfers. For example, in January 2016, Daigle and Woolford used $1,050,635.00 of AAL's funds to buy a Cessna 525 airplane for themselves. *See* Ex. 3; Ex. 4. Daigle and Woolford initially entered into an Aircraft Purchase and Sale Agreement in the name of AAL with Pride Air, Inc. *See* Ex. 5. They then caused AAL to assign the Purchase Agreement to Corvis Arrow, LLC ("Corvis Arrow"), a company they own and control. *Id.*

4.     When AAL's chairman of the board and director Sirbu asked Daigle about the airplane when he saw it at AAL's hangar, Daigle falsely told Sirbu that the airplane belonged to a customer that hired AAL to do modification work on the airplane. *See* Ex. 6. Daigle also told Sirbu that the "customer" would allow AAL to use the airplane while being modified as long as AAL would pay for its use. *Id.* Daigle and Woolford never told Sirbu that payments by AAL for the airplane's use were, in fact, going to them (Daigle and Woolford) as owners of Corvis Arrow. *Id.*

28850927 v1

5.      In considering this issue, Judge Patrick, of the Circuit Court of Jefferson County, Alabama, entered a TRO prohibiting BHA's officers Daigle and Woolford, Corvis Arrow, Cold Harbor, and anyone working in concert with them from "moving, flying, leasing, selling, transferring, encumbering or otherwise using Cessna 525 FAA Registration Number N294CW." *See* Ex. 4. Judge Patrick found that Daigle and Woolford had acted fraudulently:

1.      In January 2016, Paul Daigle ("Daigle") and Keith Woolford ("Woolford") used Plaintiff AAL USA's ("AAL") money to buy Cessna 525 FAA Registration Number N294CW ("the Jet"). The cost of the Jet was $1,050,635.00.

2.      Daigle and Woolford initially entered into an Aircraft Purchase and Sale Agreement in the name of AAL with Pride Air, Inc. They then caused AAL to assign the Purchase Agreement to Corvis Arrow. Woolford signed the Assignment for AAL (as CFO), and Daigle (the CEO of AAL) signed for Corvis Arrow as its manager.

3.      Contemporaneously, Daigle and Woolford filed a registration of the Jet called a "Statement in Support of Registration of a United States Civil Aircraft in the Name of a Limited Liability Company." In the Registration Materials, Daigle and Woolford stated that Corvis Arrow is a Delaware LLC whose sole member is Cold Harbor. Daigle and Woolford further stated that they were the managers of Corvis Arrow. In an addendum to the registration statement, Daigle and Woolford stated:

> Corvis Arrow, LLC, a Delaware limited liability company, is a wholly-owned subsidiary of Cold Harbor Certifications, Inc., a New Hampshire corporation. All of the issued and outstanding stock of Cold Harbor Certifications, Inc. is owned by Keith Woolford and Paul Daigle, both of whom are U.S. citizens. Keith Woolford and Paul Daigle are the only Managers of Corvis Arrow, LLC, and the only officers and members of the Board of Directors of Cold Harbor Certifications, Inc.

4.      The Jet was used by Daigle and Woolford for their private trips and vacations as well as their own personal business interests, and AAL USA covered all the cost associated with the operations, maintenance, and insurance of the Jet.

…

7.      … There is documented evidence that the Respondents used AAL's money to buy themselves the Jet and transferred it into companies that they owned and controlled. Further, there is other evidence that AAL will succeed on its claims against the Respondents for breach of fiduciary duty, conversion, fraud,

suppression, etc. based on the evidence that Daigle and Woolford purchased and misappropriated the Jet as part of an overall scheme to buy themselves houses, give themselves hundreds of thousands of dollars in improper bonuses, and transfer millions of dollars without justification from AAL's accounts to Respondents' accounts.

Ex. 4.

6.      Absent a court order, the Respondents will be free to continue to try to siphon off, hide, secret, dissipate, and/or abscond with the assets at issue in this case.

**B.      BHA wrongfully denied Saul Kirsch's Request for Inspection.**

7.      Kirsch currently owns 12.5% of BHA's preferred shares. Ex. 1, ¶ 3.

8.      On December 9, 2016, Kirsch mailed BHA a letter making a Request for Inspection of Records (the "Request") in accordance with the Alabama Code. *See* Ex. 9. *See also* § 10A-2-16.02(a) ("A shareholder of a domestic corporation or of a foreign corporation with its principal office within this state is entitled to inspect and copy, during regular business hours at the corporation's principal office, or if its principal office is outside this state, at a reasonable location within this state, specified by the corporation, **any of the records of the corporation** …) (emphasis added).

9.      The Request called for the inspection and copying of BHA's books, papers, records of account, minutes, and record of shareholders within the scope of Section 10A-2-16.02. In addition, the Request specifically set forth the areas and items to be inspected and proposed to do so at a reasonable time, place and manner:

1.      A list of the names and business addresses of the directors and shareholders of the Corporation;

2.      Records of the actions taken by the Board of Directors of the Corporation since 2015;

3.      Federal Income Tax Returns Filed by the Corporation for 2015;

4.      Federal Payroll Tax Returns filed by the Corporation for each period during 2015-2016 and W-2 reports issued to employees for 2015-2016;

5.      Copies of all Corporation bank statements for the past 24 months;

6.      Annual financial statements of the Corporation reviewed or audited by a public accountant for the last 24 months;

7.      Annual financial statements of the Corporation prepared by the Corporation for internal use or otherwise for the last 24 months;

8.      Interim financial statements of the Corporation prepared by the Corporation for internal use or otherwise for any monthly, quarterly, or other interim period during 2015-2016; and

9.      Records of account with respect to the compensation paid by the Corporation to any of its officers during 2015-2016 including, without limitation, salaries and bonuses paid to the shareholders as employees.

Ex. 9.

10.      Predictably, BHA failed to furnish important records to which Kirsch is entitled. On the first day that records were supposed to be made available to Kirsch, BHA's counsel emailed a letter at 4:21 p.m. that offered grossly insufficient and incomplete records. *See* Ex. 10. In a transparent effort to hide records from Kirsch in order to stall the discovery of self-dealing and waste, BHA cherry-picked the documents it would make available and arbitrary date ranges for the limited documents that would be produced.

11.      For example, Request No. 2 asks for "[r]ecords of the actions taken by the Board of Directors of the Corporation since 2015." Rather than produce those records, BHA offered "[r]ecords of activities **through September 30, 2016** shall be made available for inspection and copying." Ex. 10 (emphasis added). BHA's activities expanded exponentially on September 30, and its activities since that date are highly suspect and the very subject of this motion. This is

akin to a person using their phone to commit a crime on a Monday and offering to produce telephone records up until the previous Sunday. The offered production would also not include documents reflecting the sale of BHA or its assets, of which Kirsch is a 12.5% owner.

12.    BHA plays the same game responding to Requests 1, 4, 5, 6, 7, 8 and 9. The responses only provide records "through September 30, 2016" or "as of September 30, 2016." Given that almost all of the Respondent's business commenced after September 30, furnishing only documents from prior to October 1 is no different than a refusal to furnish any documents.

13.    Kirsch needs the records from after September 30 so that he can determine how his company is being run. From all appearances, BHA is being horribly mismanaged and has even gone so far as to sue Kirsch himself. That BHA is suing Kirsch is not a legitimate reason to deny Kirsch's right to inspection; it is a reason to allow it. BHA is simply retaliating against Kirsch because Kirsch refused to acquiesce to BHA's officers' schemes. Kirsch's right to inspect records is absolute under Alabama law absent circumstances that BHA does not have here and cannot prove.

14.    Kirsch has practical reasons for inspection: (1) Kirsch has learned of the history of fraudulent activities and breaches of fiduciary duties by BHA's current officers when they were employed by AAL and has reason to believe they are engaging in the same or similar fraudulent self-dealing at BHA; (2) Kirsch is concerned with the amount of money BHA is spending to fund litigation against him and defending independent actions against Woolford and Daigle personally totally unrelated to BHA that deals with converted money to buy personal houses and an airplane with AAL's funds; and (3) Kirsch understands that a sale of the company or its assets may be imminent affecting his interest in the company. BHA is using corporate funds to defend the wrongdoing of Woolford and Daigle that has nothing to do with BHA.

15.     BHA made numerous false generalizations and accusations about Kirsch in responding to his demand to inspect corporate records, but BHA provided no evidence that Kirsch's motivation for inspection is improper, that he is acting in bad faith, or that he has improperly used information in the past that was culled from the corporate records. *See* § 10A-2-16.02(c). Instead, BHA's bases for both denying Kirsch's inspection demand and suing Kirsch are based on an Affidavit of Keith Woolford - an affidavit riddled with falsehoods. *Compare* Affidavit of Keith Woolford, attached as Ex. 11, with the Affidavits of Alyssa Connell (Ex. 12), Affidavit of Holland & Knight (Ex. 13), Affidavit of Kip Nesmith (Ex. 14), and Affidavit of Hall Albright Garrison & Associates (Ex. 15) discussed *infra*.

16.     For example, Woolford falsely testifies that "[t]he purchase price under the APA…was based on a third party valuation conducted by Hall Albright Garrison & Associates, the outside CPA firm for AAL." Ex. 9, ¶ 13-14. But Hall Albright Garrison & Associates ("HAGA") testifies that "HAGA did not conduct, and has never conducted, any third-party valuation of AAL." *See* Ex. 15. HAGA further states that Mr. Woolford represented in his affidavit that it performed a valuation of AAL USA which was "false when made." *Id.*

17.     In paragraph 10 of the Woolford Affidavit, Woolford misrepresents that at the time of the execution of the Asset Purchase Agreement ("APA"), BHA and AAL were represented by their own counsel. Ex. 11, at ¶ 10. In fact, however, BHA and AAL were both represented by Maynard Cooper & Gale, P.C. ("MCG") (which subsequently withdrew from the joint representation). Furthermore, the law firm that Woolford claims represented AAL in the APA, Holland & Knight, has testified that it only represents AAL with respect to contracts with the United States Government. *See* Ex. 13.

18.     Woolford again testifies falsely in paragraph 29 of his affidavit by asserting that on November 11, 2016, Alyssa Connell changed the administrative password and rights to the BHA website at the direction of AAL. Ex. 11, ¶ 29. In fact, Alyssa Connell testifies that:

> Mr. Woolford's allegation is not true. Prior to November 11, I had provided the administrative password and rights to Mr. Woolford. Mr. Woolford recently requested the administrative password and rights again, and I re-sent him the exact same information I had previously provided to him. There has been no change to the administrative password and rights for the BHA website.

Ex. 12, ¶ 10.

19.     As yet another example of his untruthfulness, Woolford testified that "AAL's counsel wrote a letter to Black Hall's bank, Iberia Bank, falsely accusing Black Hall of fraud … as a result, Iberia Bank temporarily froze Black Hall's accounts." Ex. 11, ¶ 30. But AAL's counsel did not send a letter to Iberia Bank accusing BHA of fraud. *See* Ex. 14.

20.     Kirsch has proper cause to inspect the records of the Respondent after September 30, especially in light of the mounting evidence that Daigle, Woolford, and other BHA officers are engaged in deceit, self-dealing, waste, frivolous lawsuits, failure to preserve documents, and a potential sale of the company or its assets. Without a mandatory injunction order requiring immediate compliance with their statutory obligations, Kirsch has no way of valuing his shares in the company (exercising his statutory right of inspection), preserving company assets, and ensuring that important documents are preserved.

### III. ARGUMENT

### A.     The Court should enjoin BHA from selling or transferring BHA or its assets during the pendency of this litigation.

For the court to enter a TRO, a movant must show: "(1) that without the [TRO] the plaintiff would suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff has at least a reasonable chance of success on the ultimate

merits of his case; and (4) that the hardship imposed on the defendant by the [TRO] would not unreasonably outweigh the benefit accruing to the plaintiff." *Lott v. E. Shore Christian Ctr.*, 908 So. 2d 922, 927 (Ala. 2005). The requirements for a preliminary injunction are the same. *Water Works & Sewer Bd. of the City of Birmingham v. Inland Lake Investments, LLC*, 31 So. 3d 686, 690 (Ala. 2009). Here, the Defendants are entitled to a TRO and a preliminary injunction because BHA has irreparably injured the Defendants by wasting and misusing its resources and attempting to transfer its assets while this litigation is pending.

### 1. Absent entry of a TRO and preliminary injunction, AAL would suffer immediate and irreparable injury.

There are several different forms of irreparable injury that are risked if BHA is allowed to transfer ownership in BHA and/or its assets. BHA's officers have demonstrated that they are a danger to dissipate and hide assets (as Judge Patrick recognized), and for that reason allowing them to continue to destroy corporate records and/or sell the company without oversight risks imminent irreparable injury.

AAL has good reason to believe that BHA will continue to try to transfer or hide assets during this litigation. While executives of AAL, BHA's officers misappropriated AAL's funds to buy themselves houses, misappropriated AAL's funds to buy a jet, and misappropriated AAL's funds in a number of other ways. *See*, *e.g.*, December 23 order (Ex. 4). Now, as executives of BHA, they are attempting to sell AAL's/BHA's assets, engaging in lawsuits based on false affidavits, refusing to furnish corporate records, and hiding, destroying, or otherwise failing to preserve documents to try to hide their fraud. Given that risk, and given the value of BHA, there is a substantial danger that BHA will transfer assets out of the reach of AAL and/or the Court. This demonstrates the danger or irreparable injury. In an analogous case, the Third Circuit held:

> That irreparable harm would occur absent an asset freeze is even more apparent
> where the very assets subject to a potential judgment will likely be dissipated

without entry of the order. Thus, consistent with *Hoxworth*, we hold that a court may find that a party seeking an asset freeze to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation.

*Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996); *see also Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005) ("The defendants also deny that irreparable injury has been established. The possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury…but the story is quite different where there is a strong indication that the defendant may dissipate or conceal assets.…Otus's probable fraud, his prevarications about repayment, and the switch of the business from Realm to AMA are ample indication of the need for relief against Otus."); *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) ("Haya also claims that plaintiffs did not bear their burden of establishing the possibility of irreparable injury or that the balance of hardships tipped in their favor. The district court, however, expressly found that it was not only possible, but probable that Haya would engage in misconduct to conceal or dissipate assets."). Given BHA's officers' histories of fraudulent acts combined with the evidence that BHA is trying to sell the company, an injunction is necessary to prevent irreparable injury.

Furthermore, there is the danger that BHA will become insolvent, leaving AAL without any actual remedy if it obtains a judgment against BHA on its counterclaim. In such cases, preservation of the property at issue is justified to prevent irreparable harm. *See*, *e.g.*, *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97 (6th Cir. 1982) ("The power of the district court to preserve a fund or property which may be the subject of a final decree is well established."); *Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV-MOORE, 2008 WL 4716965, at *8 (S.D. Fla. Oct. 22, 2008) ("There is a significant risk that Unique Marine will continue to liquidate the assets that constitute the Collateral owed to Textron and, for all practical

12

purposes, frustrate Textron's rights to collect the Collateral under the terms of the Credit Agreement.").

Indeed, the Fifth Circuit held that freezing assets is proper where there is a danger that the assets are in danger of being dissipated or destroyed:

> …case law provides several examples of courts properly freezing assets prior to a final determination on the merits. When dissipation of the funds to numerous recipients would effectively have destroyed the pending cause of action in Foltz v. U.S. News & World Report, 760 F.2d 1300 (D.C. Cir. 1985), plaintiffs suing an employee benefits plan successfully enjoined the plan from paying out its assets to numerous possible recipients. The court found that if they had to chase the assets disbursed to these people, the plaintiffs might never recover. The Eighth Circuit addressed a similar problem in Lynch Corp. v. Omaha National Bank, 666 F.2d 1208 (1981): Should Lynch succeed in [its] litigation, it would be forced to pursue the numerous transferees who received escrow money from ONB. Lynch's injury is irreparable and there is no adequate remedy at law because a multiplicity of suits would be required to gain relief.... [I]rreparable harm is established when the distribution of assets of a liquidated company before an adjudication of rescission claims would defeat and delay satisfaction of those claims if they were ultimately sustained. Id. at 1212 (citations and footnote omitted). Similarly, once the defendants in this case are allowed to dissipate their assets, FSLIC may lose its opportunity to recover the alleged improper or illegal payments to the defendants in the event of final judgment.

Fed. Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 561 (5th Cir. 1987); see also Deckert v. Indep. Shares Corp., 311 U.S. 282, 290 (1940) (finding trial court's grant of TRO proper); Weinstein v. Aisenberg, 758 So. 2d 705, 710 (Fla. Dist. Ct. App.), dismissed, 767 So. 2d 453 (Fla. 2000) ("As to the irreparable harm/inadequate remedy aspects of the showing necessary for a preliminary injunction, Professor Wasserman concludes that "in cases in which the plaintiff sues to collect money damages and can demonstrate that the defendant is about to dissipate her assets to frustrate the potential money judgment," the plaintiff's harm should be considered irreparable."). The danger that AAL could be left with no way to recoup money awarded by this Court if BHA becomes insolvent due to mismanagement or fraudulent conveyance makes the threatened injury irreparable, as does the fact that any sale of BHA could essentially destroy any

13

possibility of AAL recovering the wrongfully-taken assets in order to continue relationships and contracts.

BHA is using AAL's own resources to actively undermine AAL's relationships with its most important customers, and its officers are attempting to sell BHA to compete with AAL. *See, e.g.*, Counterclaim. Damage to customer relationships constitutes irreparable harm. *See J.E. Hanger, Inc. v. Scussel*, 937 F. Supp. 1546, 1555 (M.D. Ala. 1996) ("the loss of customers and good will is an 'irreparable' injury."). If BHA's ownership changes or its assets are moved, AAL will have no way of salvaging existing business relationships and contracts and will risk being driven out of business.

There is substantial evidence in the record already that BHA has sued the Defendants based on a false affidavit, has destroyed documents, and has hidden and misappropriated assets. BHA's officers should not be left with the opportunity to transfer assets outside of the Court's reach and/or to manufacture BHA's insolvency. For all of these reasons, there is substantial evidence of imminent irreparable injury.

### 2.    AAL has no adequate remedy at law.

"An injunction is to be issued only to prevent substantial injury where no adequate remedy at law is available." *United Servs. Auto. Ass'n v. Allen*, 519 So. 2d 506, 508 (Ala. 1988). Here, there is no adequate remedy at law for all the same reasons that there is irreparable injury. The officers of BHA could sell the company and/or transfer all the money and assets of BHA overseas outside this Court's reach, thus any judgment awarded to Defendants would be non-collectible. Further, BHA could liquidate the company in a sale, letting its officers escape with the proceeds but leaving AAL without an adequate remedy. Or, BHA could become insolvent, leaving AAL with no way to collect and recoup their losses. Finally, a transfer of BHA's assets

could destroy any hope that AAL can salvage its existing business relationships and contracts. Therefore, AAL lacks an adequate remedy at law to compensate it for any of these dangers.

### 3. AAL has at least a reasonable chance of success on the merits of its case.

Alabama's requirement that a movant show only a "reasonable chance of success" is a low standard that is easily met. *Lott*, 908 So. 2d at 927. It does not require a "strong" likelihood or even "reasonable likelihood." *See Joseph v. Sasafrasnet, LLC*, 689 F.3d 683, 689 (7th Cir. 2012); *see also Marini v. Atl. Richfield Co.*, 475 F. Supp. 142, 144 (D.N.J. 1979) ("Obviously this criteria differs from and is less stringent than the more familiar showing required by Fed.R.Civ.P. 65(b).").

There is a wealth of evidence supporting AAL's Counterclaim. There is, for example, substantial evidence that AAL was fraudulently-induced to enter into the APA, that BHA has converted the assets of AAL, that BHA has wrongfully obtained and misused AAL's intellectual property, and that BHA failed to fulfill its contractual obligations to transfer its Part 145 license and shares to AAL. Especially in light of the fact that Alabama law only requires a "reasonable chance of success," this element is easily met.

### 4. The balance of hardships favors entry of a TRO and a preliminary injunction.

The hardship imposed on BHA by an injunction would not unreasonably outweigh the benefit accruing to AAL. Under Alabama law, "the trial court, in its discretion and given the facts and circumstances of each case, may consider and weigh the relative hardships that each party may suffer against the benefits that may flow from the grant of the preliminary injunction." *Martin v. First Fed. Sav. & Loan Ass'n of Andalusia*, 559 So. 2d 1075, 1079 (Ala. 1990). Where the movant would lose substantially without the injunction, and there is insubstantial evidence of

harm to the non-movant, an injunction should issue. *Triple J Cattle, Inc. v. Chambers*, 551 So. 2d 280, 283 (Ala. 1989) (affirming the trial court).

Here, the hardship on BHA would not unreasonably outweigh the benefits accruing to AAL. If BHA transfers its assets, AAL may not have the ability to enforce the return of its stolen assets. In contrast, BHA and its officers would simply need to stop trying to sell the company during pending litigation and not transfer its assets. Finally, given BHA's fraudulent actions that led to this point, any hardship would not be unreasonable.

**B.** **The Court should order BHA to comply with Kirsch's Request for Inspection of Corporate Records.**

**1.** **Kirsch has an absolute statutory right to make a full inspection.**

Kirsch has an absolute statutory right to make a full inspection of BHA's books and records. ALA. CODE § 10A-2-16.02 provides in pertinent part:

> (a) A shareholder of a domestic corporation or of a foreign corporation with its principal office within this state is entitled to inspect and copy, during regular business hours at the corporation's principal office, or if its principal office is outside this state, at a reasonable location within this state, specified by the corporation, any of the records of the corporation described in Section 10A-2-16.01(e) if he or she gives the corporation written notice of his or her demand at least five business days before the date on which he or she wishes to inspect and copy.

> (b) A shareholder of a domestic corporation or of a foreign corporation with its principal office within this state who shall have been a holder of record of shares for 180 days immediately preceding his or her demand or who is the holder of record of at least five percent of the outstanding shares is entitled to inspect and copy during regular business hours at a reasonable location within this state specified by the corporation, or in the case of accounting records of the corporation, if the records are maintained outside the state and inspection and copying within this state is impracticable, at a reasonable location outside the state specified by the corporation, for any proper purpose, all of its books, papers, records of account, minutes and record of shareholders, if the shareholder gives the corporation written notice of his or her demand, stating the purpose therefor, at least five business days before the date on which he or she wishes to inspect and copy….

ALA. CODE § 10A-2-16.02(a),(b). Further, the Alabama Supreme Court noted that "[t]he right of the stockholder to such examination as here demanded is recognized in this state by statute (section 7001, Code of 1923), which provides only one express limitation to the effect that it must be exercised 'at reasonable and proper times.'" *Burns v. Drennen*, 220 Ala. 404, 405 (1930).

Given the Respondent's history and present refusal to furnish corporate records to Kirsch, an order is necessary. Absent an order, BHA will continue to hide its records and will only make a self-serving production of records.

The only possible exception to Kirsch's absolute right to inspect the books and records of BHA would be if BHA could prove that Kirsch's purpose for inspection is improper, and "**in all other respects, this statutory right is absolute.**" *See id.* (granting shareholder's injunction for inspection even though the shareholder was suing the corporation for unpaid salary because the examination would not materially affect the litigation) (citations omitted) (emphasis added). *See also Cobb v. Lagarde*, 129 Ala. 488, 489 (1901) (granting injunction for inspection even though the shareholder and company were in an adversarial relationship, the shareholder owned stock in a rival corporation, and just because the shareholder may gain some unfair advantage does not establish improper motive).

Nothing approaching evidence of an improper purpose exists here. Kirsch, quite understandably, has grave concerns about the way that BHA is being run. Kirsch is likewise concerned that Daigle, Woolford, and others are continuing to engage in improper conduct and self-dealing. Kirsch knows that BHA is using its assets to frivolously sue its shareholders. If Kirsch's motive for inspection is not a proper purpose, then a "proper purpose" does not exist.

It also appears BHA may become insolvent, which is another reason Kirsch desires to inspect BHA's complete books and records. The potential insolvency of a corporation is a

legitimate purpose to request an inspection of corporate documents. *See Cobb*, 129 Ala. at 489. The Alabama Supreme Court explained: "[t]he insolvency of the company might well tend to show some reason for the petitioners' anxiety in exercising their right to examine into the company's affairs." *Id*. BHA should not be allowed to conceal the very records that could expose the wrongful denial of Kirsch's request for inspection and the diminution of Kirsch's shares.

### 2. BHA breached its duty to allow Kirsch to make a full inspection.

As set out above, BHA made only a partial response to Kirsch's request to inspect BHA's corporate documents.

BHA's refusal to allow a full inspection is contrary to the purpose of the statute and non-compliance. "The statute…enlarges the right and removes certain common law restrictions tending to embarrass exercise of the right, rendering it consistent and coextensive with the stockholder's right, as a common owner of the property, books and papers of the corporation and, at the same time, consistent with the duties and obligations of the managing officers, as agents and trustees." *Alabama Gas Corp. v. Morrow*, 93 So. 2d 515, 517 (Ala. 1957); *see also Smith v. Flynn*, 155 So. 2d 497, 502 (Ala. 1963) (discussing the proper construction of the inspection statute).

Further, a penalty award is mandated for refusal to allow inspection or even where the company has partially complied with its obligations under the law. *See*, *e.g.*, *Sewell v. Bank of Wedowee*, 918 F.2d 152, 154 (11th Cir. 1990) ("In this case the district court found a violation of the statute but did not impose any penalty for that violation. Although the court may have been correct in concluding that the violation was 'negligible,' the statute requires that the court impose some penalty."). A partial violation of the statute thus also constitutes non-compliance.

### 3. Kirsch is entitled to recover a penalty for BHA's wrongful refusal.

Alabama law provides for a specific set of remedies when a request to inspect records is denied. Section 10A-2-16.02 provides in pertinent part:

> Any officer or agent who, or a corporation which, without reasonable cause, shall refuse to allow any shareholder, or his or her agent or attorney so to examine and make copies of and extracts from its books, papers, records of account, minutes and record of shareholders, for any proper purpose, shall be liable to the shareholder for **a penalty of an amount not to exceed 10 percent of the value of the shares owned by the shareholder, in addition to any other damages or remedy afforded him or her by law....**

ALA. CODE § 10A-2-16.02(c) (emphasis added).

Here, BHA has refused to allow Kirsch to inspect the books and records he is entitled to inspect. Instead, BHA has offered to produce a small subset of the requested documents, denying the demand as it relates to the core areas and time periods at issue.

Kirsch, therefore, is entitled to compensation under Alabama law and is further entitled to recover his attorneys' fees incurred in bringing his motion. *See id. See also generally Miles v. Bank of Heflin*, 349 So. 2d 1072, 1077 (Ala. 1977) (affirming denial of attorneys' fees but allowing that those fees might be awarded "upon establishing a substantial benefit to the corporation, pecuniary or otherwise.").

## IV. <u>REQUESTED RELIEF</u>

**WHEREFORE**, the Defendants respectfully request that the Court enter a TRO and preliminary injunction prohibiting BHA and anyone acting in concert with it from selling or otherwise transferring shares in and/or the assets (or any substantial portion of the assets) of BHA. Kirsch further respectfully requests that the Court enter an emergency order (1) requiring BHA to fully comply with Kirsch's demand to inspect BHA's books and records within two business days; (2) requiring BHA to pay Kirsch's attorneys' fees incurred bringing this motion; and (3) awarding Kirsch the maximum relief allowed under ALA. CODE § 10A-2-16.02.

Dated: January 3, 2017

*s/ Victor Hayslip*
Victor Hayslip (HAY019)
Kip A. Nesmith (NES007)
Benjamin Coulter (COU027)
Fob H. James, IV (JAM043)

*Attorneys for Defendants*
AAL USA INC. AND SAUL KIRSCH

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
vhayslip@burr.com
knesmith@burr.com
bcoulter@burr.com
fjames@burr.com

## CERTIFICATE OF SERVICE

I do hereby certify on January 3, 2017, that a copy of the above and foregoing has been

served upon the following via electronic filing or U.S. Mail:

James H. Richardson
RICHARDSON MAPLES, P.C.
301 East Holmes Avenue, Suite 100
Huntsville, AL 35801

Roderic G. Steakley
Benjamin R. Little
SIROTE & PERMUTT, P.C.
305 Church Street, Suite 800
Huntsville, AL 35801

*s/ Victor Hayslip*
OF COUNSEL

# EXHIBIT 13

# AFFIDAVIT

Without waiving any other attorney-client privilege, Ronald S. Perlman and

Ronald Oleynik hereby affirm that Holland & Knight, LLP counseled AAL USA, Inc. (and Oleg

Sirbu as owner) solely and exclusively with regard to its ban from Kandahar and Bagram air

bases, in order to assist in identifying and resolving whatever issues had precipitated the ban.

_____
Ronald S. Perlman

_____
Ronald Oleynik

Subscribed and sworn to before me this 5ᵗʰ day of December, 2016 by Ronald S. Perlman.

_____
Notary Public

**RUTH A. THOMAS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2021

Subscribed and sworn to before me this 5ᵗʰ day of December, 2016 by Ronald Oleynik.

_____
Notary Public

**RUTH A. THOMAS**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 2021

# Exhibit 7

| | |
|---|---|
| **From:** | Nesmith, Kip <knesmith@burr.com> |
| **Sent:** | Thursday, November 30, 2017 3:44 PM |
| **To:** | Sweet, Mark |
| **Cc:** | Hayslip, Victor; Bromberg, Todd |
| **Subject:** | RE: Subpoena |

Thanks

**From:** Sweet, Mark [mailto:MSweet@wileyrein.com]
**Sent:** Thursday, November 30, 2017 2:41 PM
**To:** Nesmith, Kip
**Cc:** Hayslip, Victor; Bromberg, Todd
**Subject:** RE: Subpoena

Yes, I will email them.

Mark


Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter


**From:** Nesmith, Kip [mailto:knesmith@burr.com]
**Sent:** Thursday, November 30, 2017 3:03 PM
**To:** Sweet, Mark <MSweet@wileyrein.com>
**Cc:** Hayslip, Victor <vhayslip@burr.com>; Bromberg, Todd <TBromberg@wileyrein.com>
**Subject:** Subpoena

Mark,

We just received a call from Holland & Knight.  Apparently they received y'alls subpoena.  Can you agree to suspend the deadline for compliance for two weeks while we try and resolve everything?

Thanks.

Kip



**Kip A. Nesmith •** *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203

direct 205-458-5491 • fax 205-714-6836 • main 205-251-3000

knesmith@burr.com • www.burr.com

Blog: www.burr.com/blogs/securities-litigation/

ALABAMA • DELAWARE • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

---

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wileyrein.com.

# Exhibit 8

| From: | Paul.Kiernan@hklaw.com |
|---|---|
| **Sent:** | Thursday, November 30, 2017 3:50 PM |
| **To:** | Sweet, Mark |
| **Cc:** | Bromberg, Todd; Gibbens, Josephine; blittle@Sirote.com |
| **Subject:** | RE: Subpoena for Documents to Holland & Knight |

Ok, Mark. Thanks for letting us know.

**Paul Kiernan | Holland & Knight**
Partner
Holland & Knight LLP
800 17th Street N.W., Suite 1100 | Washington, DC 20006
Phone 202.663.7276 | Fax 202.955.5564
paul.kiernan@hklaw.com | www.hklaw.com

_____
Add to address book | View professional biography

**From:** Sweet, Mark [mailto:MSweet@wileyrein.com]
**Sent:** Thursday, November 30, 2017 3:49 PM
**To:** Kiernan, Paul J (WAS - X77276) <Paul.Kiernan@hklaw.com>
**Cc:** Bromberg, Todd <TBromberg@wileyrein.com>; Gibbens, Josephine <JGibbens@wileyrein.com>; Little, Benjamin R. <blittle@Sirote.com>
**Subject:** RE: Subpoena for Documents to Holland & Knight

Paul,

We have been negotiating with AAL to reach a settlement of this case, and the negotiations have advanced far enough that the parties have agreed to push off several discovery and briefing deadlines with the goal of working out a final settlement in the next few weeks. Accordingly, we can give you a two-week extension on the deadline for responding to the subpoena issued to Holland & Knight. If we are able to finalize a settlement, I will let you know.

Mark

Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

_____

**From:** Sweet, Mark
**Sent:** Friday, November 17, 2017 3:58 PM
**To:** Paul.Kiernan@hklaw.com
**Cc:** Bromberg, Todd <TBromberg@wileyrein.com>; Gibbens, Josephine <jgibbens@wileyrein.com>; Little, Benjamin R. <blittle@Sirote.com>
**Subject:** Subpoena for Documents to Holland & Knight

1

Paul,

Thanks for speaking with me a few minutes ago and working with us on service of the subpoena. Attached is a courtesy copy of the subpoena. As requested, our paralegal, Josie Gibbens, will be walking over in a few minutes to deliver a copy to you in person. After you have had a chance to review the subpoena, please give me a call and we can discuss it further.

Best regards,
Mark

Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wileyrein.com.

---

NOTE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

# Exhibit 9



**BURR ⁙ FORMAN** LLP
*results matter*

Fob H. James, IV
fjames@burr.com
Direct Dial: (205) 458-5311
Direct Fax: (205) 244-5702

420 North 20th Street
Suite 3400
Birmingham, AL 35203

*Office* (205) 251-3000
*Fax* (205) 458-5100

B U R R . C O M

January 4, 2018

**VIA EMAIL**
Mark B. Sweet
WILEY REIN LLP
msweet@wileyrein.com

> **RE:** *AAL USA, Inc. v Black Hall, LLC et al.*, Case No. 2:16-cv-02090-KOB

Dear Mark:

I am writing to request that you withdraw certain of the Subpoenas which you first noticed on November 17, 2017 (a copy of the Notice of Intent and proposed Subpoenas are attached to this letter for your convenience). As you know, the Court must quash subpoenas which require the disclosure of privileged or other protected matter. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). Specifically, the Subpoenas to Holland & Knight, LLC ("H&K"), to Beverly Lang, and to Diversified Business Solutions ("DBS") are objectionable for several reasons and will force us to file a Motion to Quash if they are not withdrawn.

**<u>The H&K Subpoena</u>**

H&K serves as AAL USA's legal counsel involving matters related to the United States government. The Subpoena would require disclosure of documents and communications within the textbook definitions of attorney-client privilege and the work-product doctrine. For example, the Subpoena seeks all documents and communications relating to the Asset Purchase Agreement (the "APA"), as well as all of H&K's comments, notes, or advice regarding the APA. This information is protected by the attorney-client privilege and work-product doctrine. Later, the Subpoena requests all communications between H&K, one of AAL USA's outside counsel, and Burr & Forman, another one of AAL USA's outside counsel, regarding affidavits of AAL USA's attorneys Ronald S. Perlman and Ronald Oleynik. These communications between attorneys plainly occurred in anticipation of litigation and is therefore protected by both the work-product doctrine and attorney-client privilege.

The same is true for the remainder of H&K's requests—in some form or fashion, nearly all of the Subpoena's requests implicate these well-established doctrines. As such, we ask that you withdraw it prior to our having to draw the Court's attention to these issues.

Please let me know by close of business tomorrow whether you will agree to withdraw the H&K Subpoena.

31004934 v1    A L A B A M A  •  F L O R I D A  •  G E O R G I A  •  M I S S I S S I P P I  •  T E N N E S S E E

Mark B. Sweet
January 4, 2018
Page 2

**The Lang and DBS Subpoenas**

Lang and her company, DBS, have been AAL USA's bookkeeper and bookkeeping company during the timeframe set forth in the Subpoenas. As such, many of the documents and correspondence requested in the Subpoenas rightly belong to AAL USA. These Subpoenas would require disclosure of AAL USA's trade secrets and other confidential information, as well as documents and communications protected by the attorney-client privilege and attorney work-product doctrine.

First, the Subpoenas seek all correspondence between Lang and DBS and Intuit regarding AAL USA, AAL Group Ltd., or BHA since September 29, 2016. The Subpoenas request the same information regarding Fish Bowl ERP. Both Intuit and Fish Bowl are accounting software companies. Communications between Lang and DBS, AAL USA's bookkeeper and her bookkeeping company, and accounting software companies will contain AAL USA's confidential financial information and private information related to AAL USA's employees.

The Subpoenas would also require production of all correspondence between Lang and DBS and (1) any employee, agent, or representative of the United States of America; (2) Oleg Sirbu; and (3) any person regarding AAL USA, AAL Group … since September 29, 2016. This correspondence will contain AAL USA's proprietary information, including trade secrets and confidential business information, such as sealed bids and financial statements, disclosure of which will be harmful to AAL USA's legitimate business interests.

Finally, the Subpoenas would require production from Lang and DBS of all correspondence between them and "any attorney or employee of Burr & Forman since September 29, 2016." Communications between Lang and Burr & Forman in this time period would quite obviously have been in anticipation of and preparation for litigation, as the Madison County case was originally filed several weeks later. As such, this request will require turning over communications which are subject to the attorney-client privilege.

Please let me know by close of business tomorrow whether you will agree to hold off serving the Lang and DBS subpoenas until we have had a chance to discuss further, or whether you are amenable to withdrawing or modifying the Subpoenas.

Sincerely,

*Fob H. James, IV*

FHJ/

31004934 v1

# Exhibit 10

| From: | Nesmith, Kip <knesmith@burr.com> |
|---|---|
| Sent: | Tuesday, December 12, 2017 3:29 PM |
| To: | Sweet, Mark |
| Cc: | Bromberg, Todd; Hayslip, Victor; Coulter, Benjamin |
| Subject: | Re: Discovery |

Thanks, Mark

Sent from my iPhone

On Dec 12, 2017, at 11:26 AM, Sweet, Mark <MSweet@wileyrein.com> wrote:

> Vic and Kip,
>
> Per my discussion with Vic and the clerk today, this confirms our agreement to extend the due date for
> all responses to discovery for the AAL parties and Black Hall parties to January 5, 2017. As part of that
> agreement, we are going to file a consent motion with the court extending the due date for the
> upcoming Black Hall parties' briefs to January 5 as well. I will send you a draft motion shortly.
>
> Mark
>
> Mark B. Sweet | Attorney at Law
> **Wiley Rein LLP**
> 1776 K Street NW | Washington, DC 20006
> T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
> www.wileyrein.com | Bio | LinkedIn | Twitter

> **From:** Nesmith, Kip [mailto:knesmith@burr.com]
> **Sent:** Friday, December 8, 2017 9:46 PM
> **To:** Sweet, Mark <MSweet@wileyrein.com>; Bromberg, Todd <TBromberg@wileyrein.com>
> **Cc:** Hayslip, Victor <vhayslip@burr.com>; Coulter, Benjamin <bcoulter@burr.com>
> **Subject:** Discovery
>
> Mark/Todd,
>
> I received Todd's email on the settlement agreement. We were snowed out today....we got about four
> inches and the entire thing shut down (don't laugh). So I have not been able to review the
> redline. Setting that aside, I'm in trial next week so Vic will be heading up our response. However, I
> note that the due date for our discovery responses (including responses to RFAs) is this next Friday,
> December 15. Even assuming we accepted your redline in its entirety (which we both know, we will
> not), there is no way we could get everything executed by Friday. Accordingly, will you agree to another
> two weeks on the discovery responses, making them due 12/29?
>
> Please confirm.
>
> Thanks,
>
> Kip

1

Sent from my iPad



**Kip A. Nesmith** • *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203

direct 205-458-5491 • fax 205-714-6836 • main 205-251-3000

knesmith@burr.com • www.burr.com

Blog: www.burr.com/blogs/securities-litigation/

ALABAMA • DELAWARE • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wileyrein.com.

# Exhibit 11

**From:** Sweet, Mark
**Sent:** Wednesday, January 17, 2018 8:32 PM
**To:** Hayslip, Victor; 'philip.evans@hklaw.com'; Bromberg, Todd
**Cc:** Coulter, Benjamin; Nesmith, Kip
**Subject:** RE: Black Hall Subpoena to Holland & Knight

Vic,

I agree that there is no upside to debating what "non-privileged" means, and I clearly disagree with any claims that I am changing my position on the fly. In any event, let's get back to basics and clear up any confusion. To the extent documents are being withheld on the basis of privilege (on whatever basis you believe you can assert a privilege), the documents should be identified in a privilege log in accordance with FRCP 26(b)(5)(A). To the extent Holland & Knight is not producing documents on a basis other than privilege, I want that to be stated clearly with an explanation for their/your position.

I don't understand your concerns about the timing of a motion to quash. We received AAL USA's objection letter on January 4. I am not going to raise an argument that AAL USA failed to make a timely objection just because it hasn't yet filed a motion to quash. However, we have not received any objections from Holland & Knight, and I reserve my right to make any arguments necessary regarding their response.

Mark

Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

**From:** Hayslip, Victor [mailto:vhayslip@burr.com]
**Sent:** Wednesday, January 17, 2018 3:10 PM
**To:** Sweet, Mark <MSweet@wileyrein.com>; 'philip.evans@hklaw.com' <philip.evans@hklaw.com>; Bromberg, Todd <TBromberg@wileyrein.com>
**Cc:** Coulter, Benjamin <bcoulter@burr.com>; Nesmith, Kip <knesmith@burr.com>
**Subject:** RE: Black Hall Subpoena to Holland & Knight

Mark, I don't understand your position on the timeliness of AAL's objections. Please let me know whether you intend to raise that issue if we hold off filing a motion to quash. Otherwise, I will assume you intend to assert any response in non-timely. I need to know today and am available for another call. I am in the office now and available tonight. I understand your position on what you think non privileged means in request 8 and 10, but there was no disagreement. They say "non-privileged"….that's what they say. There was no disagreement about this. You simply wish to revise what you now want to say "non-privileged" means. I am not asking you to change your position, but wanted to make sure you know there was no disagreement other than you revising the wording on the fly.



Vic Hayslip • *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203

direct 205-458-5255 • fax 205-244-5656 • main 205-251-3000

vhayslip@burr.com • www.burr.com

ALABAMA • DELAWARE • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

**From:** Sweet, Mark [mailto:MSweet@wileyrein.com]
**Sent:** Tuesday, January 16, 2018 3:03 PM
**To:** 'philip.evans@hklaw.com'; Hayslip, Victor
**Cc:** Coulter, Benjamin
**Subject:** Black Hall Subpoena to Holland & Knight

Pete and Vic,

Thank you for speaking with me today regarding the Black Hall subpoena to Holland & Knight. This email confirms our agreement on today's call that Holland & Knight will inform us by Thursday as to whether it has any documents responsive to the requests in the subpoena.

During the call, there was some disagreement as to what Black Hall meant when it requested "non-privileged" documents in Requests 8 and 10. So there is no confusion, Black Hall is not seeking documents under Requests 8 and 10 that are covered by the attorney-client privilege or attorney work product doctrine. Please let me know on Thursday whether Holland & Knight intends to withhold documents from these two requests on any other basis (including whether documents exist that Holland & Knight believes are subject to some other "privilege" beyond attorney-client privilege or attorney work product), and identify the category of documents that it intends to withhold with enough specificity that we can determine the appropriate next step.

Finally, in the interest of avoiding unnecessary motions with the court, Black Hall will agree not to file any motions seeking to enforce the subpoena before Holland & Knight informs us on Thursday as to whether it has any responsive documents. Additionally, while we wait to receive the information from Holland & Knight on Thursday, to the extent AAL USA's objections are timely as of today, we will not raise any arguments with the court that AAL USA has failed to make a timely objection.

If anyone files a motion to quash this subpoena, please make sure to include this email as an exhibit to your motion so that the court is aware of all of the communications to date on this subject.

Best regards,
Mark

Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

NOTICE: This message (including any attachments) from Wiley Rein LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK

PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by sending an e-mail to Information@wileyrein.com.

# Exhibit C

| **From:** | Sweet, Mark |
| **Sent:** | Friday, January 19, 2018 4:30 PM |
| **To:** | 'philip.evans@hklaw.com'; Hayslip, Victor; Nesmith, Kip; Coulter, Benjamin; James, Fob; rich@freeseandgoss.com; mdouglas@leakdouglas.com; Benton Curtis (bcurtis@broadandcassel.com); Sara M. Klco; Ryan K. Todd |
| **Cc:** | Bromberg, Todd; Steakley, Rod; Little, Benjamin R.; James H. Richardson |
| **Subject:** | RE: Black Hall Motion to Seal and Motion to Compel |
| **Attachments:** | 2018.01.18 Order to Seal.pdf |

All,

The D.C. district court has granted the motion to file under seal and assigned a case number: 18-mc-00004. A copy of the order is attached.

Best regards,
Mark

Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

---

**From:** Sweet, Mark
**Sent:** Thursday, January 18, 2018 7:14 PM
**To:** 'philip.evans@hklaw.com' <philip.evans@hklaw.com>; 'Hayslip, Victor' <vhayslip@burr.com>; Nesmith, Kip <knesmith@burr.com>; Coulter, Benjamin <bcoulter@burr.com>; 'James, Fob' <fjames@burr.com>; rich@freeseandgoss.com; 'mdouglas@leakdouglas.com' <mdouglas@leakdouglas.com>; Benton Curtis (bcurtis@broadandcassel.com) <bcurtis@broadandcassel.com>; 'Sara M. Klco' <sklco@broadandcassel.com>; 'Ryan K. Todd' <rtodd@broadandcassel.com>
**Cc:** Bromberg, Todd <TBromberg@wileyrein.com>; Steakley, Rod <rsteakley@sirote.com>; 'Little, Benjamin R.' <blittle@Sirote.com>; James H. Richardson <jim@richardsonmaples.com>
**Subject:** Black Hall Motion to Seal and Motion to Compel

Today Black Hall filed a motion to seal in the US District Court for the District of Columbia, along with a copy of a motion to compel production of documents from Holland & Knight. When the motion to seal is granted, a redacted version of the motion to compel will become publicly available on the court's docket. Attached are copies of the motion to seal and redacted and unredacted versions of the motion to compel, including exhibits.

Mark

Mark B. Sweet | Attorney at Law
**Wiley Rein LLP**
1776 K Street NW | Washington, DC 20006
T: 202.719.4649 | M: 202.641.1554 | msweet@wileyrein.com
www.wileyrein.com | Bio | LinkedIn | Twitter

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BLACK HALL, LLC and**
**BLACK HALL AEROSPACE, INC.,**

v.

**HOLLAND & KNIGHT, LLP**

Case: 1:18-mc-00004
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 1/18/2018
Description: Misc.

### ORDER

Upon consideration of Black Hall, LLC and Black Hall Aerospace, Inc.'s (collectively,

"Black Hall") Motion for Leave to File Under Seal, and all briefing, exhibits, and arguments

thereon,

**IT IS SO ORDERED**, this ___18th___ day of ___January___, 2018, that Black

Hall's Motion to for Leave to File Under Seal is **GRANTED**, and that Black Hall shall file under

seal its unredacted Motion to Compel and supporting exhibits.

U.S. DISTRICT JUDGE